Kenneth ANDERSON, Plaintiff and Respondent,

v.

Alfred SCHREINER, Defendant and Appellant.

No. 7711.

Supreme Court of North Dakota.

Dec. 18, 1958.

Rehearing Denied Jan. 28, 1959.

Cupler, Tenneson & Serkland, Fargo, and Charles G. Bangert, Enderlin, for appellant.

Holand & Stetson, Lisbon, and Wattam, Vogel, Vogel, Bright & Peterson, Fargo, for respondent.

BURKE, Judge.

The plaintiff recovered a verdict and judgment against the defendant for damages for injuries received by him in a collision of motor vehicles operated by the parties respectively. Within the time allowed by statute defendant moved the court for judgment notwithstanding the verdict. This motion was denied. Thereafter defendant made a motion for a new trial. This motion was also denied. Defendant has appealed from the judgment and from the orders denying each of the above mentioned motions.

Upon the appeal from the order denying the motion for judgment notwithstanding the verdict the sole issue is whether the evidence establishes contributory negligence, on the part of the plaintiff, as a

matter of law. The collision between plaintiff's car and defendant's car occurred at the intersection of county highways "A" and "H" in Sargent County. Highway "A" is a preferred north and south highway. The entry into highway "A" from highway "H", an east and west highway, is protected by "Stop" signs. Each highway has a smooth graveled surface and is approximately 23 feet wide. However, at about 87 feet in each cardinal direction from the center of the intersection, the highways widen on each side and curves have been installed so that vehicles changing direction may do so at a reasonable speed. The surrounding country is level and cars approaching the intersection from the north on highway "A" and cars approaching the intersection from the east on highway "H" are within full view of each other for more than 1,200 feet north and east of the intersection. At about 250 feet from the intersection, on each highway are signs giving notice of the junction of the two highways.

Just prior to the collision, at about 3:00 P.M. on a bright clear day, plaintiff was approaching the intersection from the north at about 50 miles an hour. He was familiar with the highway and knew he was nearing the intersection. He stated, that as he approached the intersection, he looked "straight ahead". He had no recollection of looking either to the left or right along the intersecting highway, but stated that he might have done so. He testified that he noticed a grove of trees located on the north side of the intersecting highway at about 150 feet to the west of the intersection. He did not however see defendant's car approaching from the east until a moment before the collision. Plaintiff testified, "Well I just seen the car—I can't say how far it was away or anything because it wasn't very far. That is about all I can say, and I had an impulse to hit the brake and I woke up in the ditch." He said "I barely seen him." Later he testified that his car was about 50 to 75 feet from the intersection when he first

saw the defendant's car and that defendant's car was farther from the intersection and travelling faster than his.

The defendant had no recollection of the accident or of the events immediately preceding it. The young lady who was a passenger in his car died as a result of the injuries she received in the collision. Plaintiff's sister who was a passenger in his car could add nothing to his testimony. She was preoccupied with a project of her own and did not see defendant's car until the last split second before the cars collided. His wife who was also a passenger had no recollection of the accident. Plaintiff's father testified that he was following plaintiff's car at a distance of about one fourth of a mile, that his view was obscured by dust kicked up by plaintiff's car and for that reason he had no knowledge of the events leading to the accident.

From the testimony and the physical evidence it reasonably appears that defendant's car did not stop at the "Stop" sign but entered the junction at a high rate of speed and struck plaintiff's car broadside just back of the left front wheel at a point almost in the exact center of the intersection. It may be reasonably inferred from the physical evidence that, at the time of impact, each car was on the left side of its proper lane of traffic and that the front wheels of plaintiff's car had just crossed the center line of the east and west highway. There was some uncertain testimony as to possible skid marks which might have indicated an attempt on plaintiff's part to apply his brakes before he was struck by defendant's car. Since however the collision was unavoidable at the time plaintiff first saw defendant's car, this evidence is wholly immaterial upon the questions of negligence and proximate cause.

Defendant asserts that the record establishes, as a matter of law that plaintiff failed to maintain any lookout while approaching the intersection, and that such failure contributed proximately to cause

his injuries and damage. He urges that plaintiff's testimony that he might have looked cannot justify a finding by the jury that he did look because a proper lookout means an effective lookout and that plaintiff cannot be heard to say that he looked and did not see when if he had looked effectively he would have seen. On the other hand plaintiff claims that the question of his negligence and the question of whether his negligence, if there was negligence, contributed proximately to cause his injuries, were questions for the jury.

A driver upon an arterial or through highway does not have an exclusive privilege which would require those crossing it to do so at their own risk. Mc-Culley v. Anderson, 119 Neb. 105, 227 N.W. 321; Rosenau v. Peterson, 147 Minn. 95, 179 N.W. 647; Groome v. Davis, 215 N.C. 510, 2 S.E.2d 771. He must look for other vehicles approaching upon an intersecting highway and his lookout must be such that he will see what a person in the exercise of ordinary care would have seen in like circumstances. Blashfield Cyc. of Automobile Law (Perm. ed.) Sec. 1037; Huddy, Law of Automobiles (7th ed.) Sec. 3.19. In this case there is no evidence that plaintiff looked either to his right or left as he neared the intersection. He testified that he looked straight ahead and that, although he doesn't remember doing so, he may have looked to the left. It is certain that he did not see defendant's car until it was too late to avoid a collision although the car was clearly within his view, if he had looked, for more than 1,200 feet before it reached the intersection. It is also clear that there were no other cars in the vicinity nor any other circumstances, distracting in their nature, which might excusably have diverted his attention. Upon this record we have no doubt but that plaintiff was negligent as a matter of law.

There remains the question of whether it can be said, as a matter of law, that plaintiff's negligence contributed proximately to cause his injuries. Upon the record the jury could have found that plaintiff entered the intersection a fraction of a second before the defendant and that at all times prior to the collision the defendant had been approaching the intersection at a speed that was substantially greater than that maintained by the plaintiff. It is argued therefore that, if plaintiff had seen defendant's car he could, in reliance upon his right of way and his greater proximity to the intersection, have reasonably reached the conclusion that it was safe for him to proceed through the intersection; that the jury might have so found and thus found that plaintiff's negligence in not looking did not contribute proximately to cause the collision. There is authority to support plaintiff's position.

In Moffitt v. Dean, 84 Ga.App. 109, 65 S.E.2d 637, it was held that the failure of a party to keep a lookout in approaching an intersection was immaterial where the party had the right of way and would have been authorized to proceed across the intersection even if he had observed the approaching vehicle. In Marshburn v. Patterson, 241 N.C. 441, 85 S.E.2d 683, it was held that the negligence of a driver upon an arterial highway in failing to keep a proper lookout, ordinarily does not constitute a proximate cause of a collision at an intersection.

There is also authority to the contrary. Ratcliff v. Myers, 382 Pa. 196, 113 A.2d 558; Oelke v. Earle, 271 Wis. 479, 74 N.W.2d 336. Orr v. Hensy, 158 Kan. 303, 147 P.2d 749.

In Hickerson v. Southern Farm Bureau Casualty Insurance Company, La.App., 77 So.2d 124, 130, it was said:

"We believe that the court below has accorded too much weight to the stop sign and favored street rule and has not given any consideration whatever to the rule requiring a motorist on a favored street to maintain a proper lookout at all times and have

his car under control although he is traveling on a favored street at a blind intersection. The driver of a motor vehicle on a favored street can lose the protection which the rule affords him by not maintaining a proper lookout."

To the same effect is Wilson v. Yellow Cab. Co., La.App., 64 So.2d 463.

The question is one upon which there appears to be considerable contrariety of decision and it seems that whichever view is adopted some logical inconsistency exists. On the one hand it hardly seems logical to say that a jury might find that the negligence of a driver upon a through highway in failing to observe the approach of a speeding car upon an intersecting highway did not contribute proximately to cause a subsequent collision by drawing an inference that if the driver had seen the approaching car and observed its speed and other relevant matters he could and would have reasonably concluded that the driver of the approaching car would yield the right of way, and thus would have proceeded through the intersection, exactly as he did and with the same result. Such an inference would appear to give a nonobserving driver credit for exercising reasonable judgment when, in fact, he had exercised no judgment at all and had negligently failed to observe conditions which could form the basis of a judgment. On the other hand, whether the circumstances were such that an observing driver would have been reasonably prudent in proceeding through the intersection is uniformly held to be a fact question for the jury. Thus for us to say that a jury might find that the conduct of an observing driver was reasonable in the circumstances, but might not find that the conduct of a non-observing driver was reasonable in identical circumstances, would upon its face appear to be logically inconsistent.

█ We think the correct answer to the problem is to be found in the fact that two separate and distinct types of negligence are involved. Whether an observing driver

has been negligent, and whether his negligence was a proximate cause, depend on what he does after he has observed the circumstances and reached a judgment with respect thereto. The negligence of the non-observing driver is in not maintaining a lookout. In a sense this negligence is remote, because whether the failure to look proximately causes an injury depends, not upon the lack of observation, but upon what the driver does as a result of not looking. Therefore it is reasonable to say that if a jury may find that the conduct of an observing driver, who was aware of an approaching car and the possible danger at an intersection, was reasonable in the circumstances, they may also find that the conduct of a non-observing driver, who was unaware of the danger, was reasonable in identical circumstances, even though his ignorance of possible danger was due to his own negligence. The ultimate jury question is whether the conduct of the driver on the arterial highway was reasonable in the light of what he saw or should have seen. Because of his qualified right to rely on his preferred status there is no inescapable inference that a driver upon an arterial highway, who hadn't looked for cars approaching on an intersecting highway would have behaved any differently if he had looked. It follows that whether his negligence in not looking was a proximate cause, was a question for the jury. Satterland v. Fieber, N.D., 91 N.W.2d 623.

█ Upon the appeal from the order denying a new trial it is contended, first that the trial court erred in denying defendant's motion for a mistrial, and second, that the verdict is excessive. The defendant had counterclaimed for damages which he alleged had been caused by plaintiff's negligence. As a part of his proof of damages he testified as follows:

"Q. And do you have an opinion as to the value of your car on October 16, 1955? A. I would say it was worth about $1,300.-00.

"Q. $1,300.00? A. Yes.

"Q. And after the accident what was it worth? A. About $80.00 worth of salvage."

Upon cross-examination of the defendant by the attorney for the plaintiff, the following record was made.

"Q. Now you testified, Alfred, that the car was sold for salvage, for $80.00? A. Yes.

"Q. Who sold that car for salvage for $80.00?

"Mr. Serkland: We object. It is immaterial.

"The Court: He may answer. A. Well, one of the guys from the insurance company sold it.

"Q. Whose insurance company, is that the insurance on the car, the collision insurance?

"Mr. Serkland: We object and ask that the jury disregard it.

"The Court: Yes, the answer may be stricken and the jury is instructed to disregard any statement made concerning the matter of insurance."

Nothing further was said at this time concerning the mention of insurance. However, after both sides had rested and after the court had granted plaintiff's motion to dismiss defendant's counterclaim and had denied defendant's motion for a directed verdict, defendant moved for a mistrial upon the ground that the mention of insurance by the defendant in reply to a question put by plaintiff's attorney constituted prejudicial error. In denying the motion for a new trial, the trial judge found that counsel for plaintiff did not intentionally bring out the fact that the defendant had some insurance but that the subject was mentioned by the defendant in response to a proper question asked of him on cross-examination, and that where the answer was stricken and the jury admonished to disregard it, the incident did not constitute reversible error or a ground for a mistrial.

We agree with the decision of the trial court. In Smith v. Knutson, 78 N.D. 43, 47 N.W.2d 537, we considered the effect of a juror's unexpected reference to insurance on voir dire examination. In holding that such a reference did not constitute a ground for a mistrial we quoted with approval from cases holding that an unexpected or inadvertent reference to insurance by a witness in answer to a proper question was not a ground for a mistrial. Such appears to be the general rule. See Annotation 4 A.L.R.2d 784; Appleman on Insurance, Sec. 12834, p. 512.

Furthermore, defendant's position is greatly weakened by the fact that at the time the incident occurred he asked for and received a curative remedy by the striking of the testimony and an admonition to the jury and did not move for a mistrial until after both sides had rested and his motion for a directed verdict had been denied. Hatfield v. Levy Bros., 18 Cal.2d 798, 117 P.2d 841; Armstrong v. Rose, 170 Va. 190, 196 S.E. 613; Connelly v. Nolte, 237 Iowa 114, 21 N.W.2d 311; Anderson v. Duban, 170 Minn. 155, 212 N.W. 180.

As a second ground for a new trial, defendant specified that the damages awarded by the jury were excessive. The verdict was for $20,000. In the collision plaintiff suffered a comminuted fracture of the thigh bone of his right leg. The bone was broken in several places and shattered to the extent that there were ten or twelve bone fragments detached from the ends of the broken bone. He also suffered fractures of the third and fourth metatarsals of the left foot. Immediately after the accident plaintiff was taken to a hospital at Lisbon. After he received emergency treatment for shock an attempt was made to reduce the fracture by placing his leg in skin traction. This treatment lasted for six days and was unsuccessful. Thereafter an open reduction was attempted and a metal pin 10 inches in length and 1/8 inch in diameter was inserted in the lower end of the thigh bone. Again the leg was placed in traction with a 15 lb. weight

being used to overcome muscle pull. The leg was in traction for about two weeks. Thereafter the pin was removed and the leg placed in a cast. After about three weeks in the cast the fracture slipped and plaintiff was removed to St. John's Hospital in Fargo on December 4, 1955. There a second open reduction was attempted, during the course of which an intramedullary nail was inserted into the thigh bone. By means of an incision made at the hip, this nail was driven down the center of the thigh bone to the place of the fracture. The upper end of the pin upon which was a small knob was left protruding from the hip after the operation. This operation was successful and plaintiff was discharged from the hospital on December 22, 1955. His leg had been placed in a heavy brace which extended from his upper thigh to his foot. He wore this brace until March 1, 1956. The intramedullary nail was removed by operation on June 15, 1956.

Plaintiff, at the time of the accident was 22 years of age, a married man and a student at the North Dakota Agricultural College where he was studying mechanical engineering. At the trial he testified that he expected to secure an engineering degree and that his grades the previous quarter had all been honor grades.

As a result of his injuries plaintiff was totally disabled for a period of about nine months. He has, according to the testimony of his surgeon a 10% to 15% permanent partial disability of the right leg and a 5% permanent partial disability of the left foot. There is also a possibility that this disability may increase due to circulatory and muscle changes in the thigh and about the knee joint. This disability is not disabling in so far as ordinary activity is concerned. It does, however, make ordinary physical use of the leg more difficult and will substantially affect all types of athletic endeavor even including walking for long distances. Plaintiff's life expectancy was 44 years.

Plaintiff established special damages for hospital and medical expenses, for loss of the automobile and incidental expenses of approximately $3,000. Is the balance of $17,000, the amount which must be considered to have been awarded for general damages, excessive? The trial court found it was not.

A motion for a new trial upon the ground of excessive damages is addressed to the judicial discretion of the trial court and the appellate court will not interfere with the trial court's decision upon such a motion unless a manifest abuse of discretion is shown. Reid v. Ehr, 36 N.D. 552, 162 N.W. 903. In personal injury cases there is no method by which damages may be computed with mathematical precision and necessarily, in such cases, a wide discretion must be allowed to the jury. Reid v. Ehr, 36 N.D. 552, 162 N.W. 903; Daniels v. Payne, 49 N.D. 370, 191 N.W. 776; Lake v. Neubauer, N.D., 87 N.W.2d 888. The rule, therefore, is that a verdict will not be set aside solely on the ground that it is excessive unless the amount thereof is so excessive as to demonstrate that the jury was influenced by passion and prejudice, Reid v. Ehr, supra; Daniels v. Payne, supra; Ziegler v. Ford Motor Co., 67 N.D. 286, 272 N.W. 743; Leonard v. North Dakota Co-operative Wool Marketing Ass'n, 72 N.D. 310, 6 N.W.2d 576.

Under the evidence in this case the jury could have found that the plaintiff was totally disabled from October 1954 to June 1955; that during that time he underwent four operations; that during all of that time he endured varying degrees of pain; that thereafter his disability diminished but that he has a permanent disability of 15% in his right leg and of 5% in his left foot; that he has a permanent limitation of normal action in his right knee and hip; that he has a shortening of two inches in his right leg; that the muscles in his right leg are atrophied to the extent that his left thigh is two inches greater in circumference than the right thigh; that his permanent disability will not diminish but will possibly increase and that as a result of his disability, plaintiff, who has a life expectancy of

44 years, will be handicapped in engaging in all but the most moderate of physical activity. The jury could also have found that plaintiff was delayed for at least six months in obtaining his engineer's degree and thus delayed for six months in securing employment as an engineer.

Concededly the damages awarded in this case are large in amount. They are not however so large that we can say that the trial judge abused his discretion in finding that the amount did not evidence passion and prejudice on the part of the jury. This court has affirmed judgments for damages for no greater injuries, which in considera-tion of the present day depreciation of dollar value, were as large in amount as the instant judgment. Daniels v. Payne, supra ($10,000 in 1922 for a back injury which was not proved to be permanent), Leonard v. North Dakota Co-operative Wool Marketing Ass'n, supra ($12,000 in 1942 to a 57 year old housewife for a broken leg and other injuries).

The order denying a new trial and the judgment of the district court are affirmed.

GRIMSON, C. J., and SATHRE and MORRIS, JJ., concur.