Donna L. KELMIS, for the Use and Benefit of Herself and Charles Joseph Kelmis, Jr., Ricky Lynne Kelmis, David Lee Kelmis, Jeffrey Scott Kelmis, and Carla Dee Kelmis, Plaintiff and Appellant,

v.

CARDINAL PETROLEUM COMPANY, a Foreign Corporation, Defendant and Respondent.

Civ. No. 8420.

Supreme Court of North Dakota.

Jan. 15, 1968.

Rehearing Denied March 1, 1968.

Pringle, Herigstad, Meschke, Loder, Mahoney & Purdy, Minot, for plaintiff and appellant.

Palda, Palda, Peterson & Anderson, Minot, for defendant and respondent.

STRUTZ, Judge.

This is an action for the wrongful death of Charles Kelmis, the plaintiff's husband, brought by the plaintiff as the surviving wife, for herself and for the use and benefit of the five surviving minor children of the plaintiff and the deceased.

Pursuant to a written motion by the plaintiff, the trial court ordered the issues of liability and damages tried separately, and thereafter proceeded to try the issue of liability. After hearing on this issue, the court ordered that the plaintiff's action be dismissed. From judgment entered pursuant to such order, the plaintiff has appealed to this court, demanding trial de novo.

There is not much dispute as to the facts. At the time of the accident, the plaintiff's husband was employed by The Boeing Company. On the morning of the accident he, with three other employees of that company, was en route to a missile site designated as "Mike-One," with one of such employees, Andrew Freed, driving a 1965 Plymouth sedan which Boeing had leased from National Car Rentals. Plaintiff's decedent was riding as a passenger in the left rear of the car. The supervisor of the crew was riding as a passenger in the right front seat. The driver and the other employees, including the plaintiff's decedent, were mechanics employed by Boeing.

This crew left Minot on the morning of the accident at approximately 7:05, en route to Missile Site Mike-One. They proceeded north on U. S. Highway No. 83 to the Lansford intersection and turned west on county highway No. 16, which is a graveled road. Freed, the driver, testified that as he drove west on county highway No. 16 he was traveling between fifty and fifty-five miles an hour, while the defendant's driver testified that defendant's vehicle was traveling about 40 miles an hour.

The driver of the car was the only survivor of the Boeing crew involved in the accident. He evidently suffered amnesia as a result of injuries received, for he cannot remember anything after passing a point on highway No. 16 some twelve miles east of the scene of the collision.

The other vehicle involved in the accident was the defendant's 1964 Mack tractor and trailer, weighing 37,000 pounds, which had an over-all length of fifty-four feet. It was being driven by an employee of the defendant, Cardinal Petroleum Company, who admittedly was operating the vehicle at the time of the accident in the course of his employment. This vehicle was en route to an oil well being drilled north of Carpio. The vehicles collided at the intersection of county highway No. 28 and county highway No. 16. At the point of the accident, county highway No. 28 runs north and south, while county highway No. 16 runs in an easterly and westerly direction.

It is undisputed that traffic on county highway No. 16, as it approaches the intersection with county highway No. 28, is controlled by a "yield right of way" sign. It is also conceded that as county highway No. 28 approaches the intersection with county highway No. 16, there is a sign approximately 500 feet from the intersection giving notice of the approaching junction.

From the record in this case, it is apparent that the intersection of the two highways is a wide-open intersection. There are no buildings, no trees, no hills, nor vegetation which could have obstructed the visibility of either driver for a distance of at least one-half mile from the intersection, with the exception of a slight knoll about 100 feet in length on highway No. 16, approximately 1,000 feet east of the intersection. It is contended by the defendant that if a car should happen to be behind the knoll when a driver approaches the intersection from the north on highway No. 28, the car on highway No. 16 would be hidden from view for a distance of about 100 feet. This knoll, however, ends 1,000 feet east of the intersection, and for the last thousand feet a vehicle approaching from the east on highway No. 16 would be in plain view from highway No. 28.

The record also discloses that the weather on the morning of the accident was clear, and that the highways were in good winter driving condition. There was some snow in the ditches, but the highways were clear.

The only eyewitness to the accident who was able to testify was the driver of the truck, since the only survivor of the crew traveling in the Boeing car does not remember anything concerning the accident. The truck driver does not remember whether he looked to the east for traffic approaching the intersection on county highway No. 16, but he believes that he did so because he always looked for oncoming traffic when approaching an intersection. He did not, however, observe the Boeing car until it was at the intersection, directly in front of him. He then slammed on his brakes, but collision at that time was unavoidable and he collided with the Boeing car with great force and violence, killing three of its occupants. The collision occurred in approximately the center of the intersection. There were no tire marks on highway No. 16 to indicate that the Boeing car's brakes had been applied at all. There were, however, tire marks of approximately fourteen feet in length left by the defendant's vehicle.

The driver of the defendant's truck stated that there were no other cars, no machinery, nor any other circumstances which might have diverted his attention from the intersection.

On the above facts, the trial court found for the defendant and dismissed the plaintiff's complaint. The court found that the driver of the defendant's vehicle was under no obligation to sense danger until the Boeing vehicle had reached a point on highway No. 16 after which it could not brake to a stop before entering the intersection. The court found that, at the speed of travel of the Boeing vehicle, it could have stopped if its brakes had been applied approximately 128 feet from the intersection. The court further found that when the Boeing vehicle had reached that point, the defendant's vehicle was at a point on the highway where it could not have stopped in time to avoid the collision. The court further found that the driver of the defendant's vehicle was not under a duty to constantly look for approaching traffic from the left; that the driver did not, in fact, observe the Boeing vehicle because his vision was obstructed by either the lefthand exterior rear-view mirror or the left corner post of the windshield.

The court also found that the defendant's driver is not held to the duty of the most careful driver but to the duty of a reasonably prudent driver, and that there is no evidence that such driver acted unreasonably; that the defendant's driver had a right to assume that the driver of the Boeing vehicle would respect his right of way, until he became aware that the plaintiff's driver was not going to do so; that the negligence of the driver of the plaintiff's vehicle was the sole, proximate cause of the collision; and that there was no actual negligence on the part of the driver of the defendant's truck.

On appeal from a judgment in an action tried without a jury, where the appellant demands a trial de novo, the appellate court tries the entire case anew, giving apprecia-

ble weight to the findings of the trial court. Braaten v. Grabinski, 77 N.D. 422, 43 N.W. 2d 381; Gust v. Wilson, 79 N.D. 865, 60 N.W.2d 202, 38 A.L.R.2d 1371; C.I.T. Corporation v. Hetland (N.D.), 143 N.W.2d 94.

This court will not apply the principle that in reviewing a case tried without a jury it will give appreciable weight to the findings of the trial court, in order to relieve it of the necessity of trying anew all questions of fact in the entire case. On trial de novo, the appellate court will find the facts for itself.

■ We agree with the trial court that the driver of the Boeing car was negligent in the operation of the vehicle in which the deceased was riding, and that his negligence was a proximate cause of the collision. However, that fact does not bar the plaintiff from recovering for the death of her husband if the driver of the defendant's vehicle also was negligent and if such negligence proximately contributed to the happening of the collision. Ordinarily, negligence on the part of the driver of a vehicle cannot be imputed to a passenger riding with him. Anderson v. Stokkeland (N. D.), 125 N.W.2d 665. Only the passenger's own negligence would bar his recovering. Fisher v. Suko (N.D.), 111 N.W.2d 360.

■ In this case, the trial court found that there was no negligence or contributory negligence, either actual or imputed, on the part of the plaintiff's decedent. On a careful review of the record, we find no evidence of negligence or contributory negligence on the part of the deceased which would bar the plaintiff's recovery in this action.

■ The defendant's employee was driving on a highway whose approaches were protected by signs requiring those entering from a side road to yield to traffic on such favored highway. However, a driver on such favored highway does not have an exclusive privilege which requires those who enter upon it to do so at their risk. The fact that a driver on approaching an intersection on a highway protected by "yield" signs knows that he has the right of way, does not give him the right to proceed without due care by failing to keep a proper lookout for others who may operate their vehicles in a negligent manner while entering the favored highway. Anderson v. Schreiner (N.D.), 94 N.W.2d 294. It is true that a driver on such favored highway has the right to assume that others will honor his right of way. But that does not allow him, because of such right, to drive without due care. Kuntz v. Stelmachuk (N. D.), 136 N.W.2d 810.

■ In the case before us, the driver of the defendant's vehicle admitted that he did not see the Boeing vehicle until it was just in front of him. He does not even know whether he looked to the east for approaching vehicles, although he thinks he might have because he usually did so on approaching an intersection. While defendant's driver had the right to assume that other vehicles would honor his right of way, he must, in the exercise of ordinary care, look for approaching vehicles on intersecting highways and his lookout must be such that he will see what a person in the exercise of ordinary care would see under like circumstances. Anderson v. Schreiner, supra. Here, it is undisputed that, except for approximately 100 feet, at a point 1,000 feet from the intersection, the driver on highway No. 28 had an unobstructed view of traffic approaching on highway No. 16 for more than half a mile. Had the driver of defendant's vehicle been exercising due care, he would have observed the Boeing vehicle aproaching the intersection in time to have avoided the collision. The mere fact that the defendant's driver had the right of way did not give him the right to proceed without due care by failing to keep a lookout for vehicles approaching on an intersecting road.

■ We find that the fact that the driver of defendant's vehicle did not actually see the Boeing vehicle approaching

the intersection, under the circumstances, although it was in plain sight and could have been seen had he looked, was negligence on his part. The record clearly establishes that there were no distracting circumstances which might excusably have diverted his attention.

■ As we said in Anderson v. Schreiner, supra, the question to be determined in this case is whether the conduct of the defendant's driver on the favored highway was reasonable in the light of what he saw, or should have seen, had he looked. It is true that the law required the driver of the Boeing car to slow down, and to stop if necessary, to yield the right of way to defendant's vehicle on the favored highway. But, had the defendant's driver looked, he would have seen that the Boeing vehicle was not going to do this. He would have seen the Boeing car for half a mile as it approached the intersection, except for a space of not more than 100 feet when it was partially hidden behind a knoll; but for the last 1,000 feet of the Boeing vehicle's approach to the intersection, he would have had it in constant view, and he would have known that it was not slowing for a yield. There is no evidence of any skid or brake marks in the gravel to indicate a slowing down of the Boeing car as it approached the intersection. Was it reasonable, in the light of what he saw or should have seen had he maintained a proper lookout, for him to continue driving his heavy vehicle toward the intersection without decreasing his speed in order to avoid a possible collision, in view of the fact that there was a warning sign advising defendant's driver of the approaching yield intersection, when he saw, or should have seen, that the Boeing car was failing to slow down for a yield?

■ We find from this evidence that defendant driver's failure to decrease his speed when he saw or should have seen that the Boeing driver was not slowing for the purpose of yielding, was negligence, and that such negligence was a proximate cause

of the collision that followed. Where the driver on a favored highway sees, or in the exercise of due care should see, that the other vehicle is failing to yield as required by law, he, himself, is under a duty of slowing down to avoid a collision. We find that the failure of defendant's driver to do so was negligence and that his negligence under the circumstances of this case proximately contributed to the accident.

The judgment of the district court is reversed, and the case is remanded for determination of the issue of damages.

ERICKSTAD and PAULSON, JJ., concur.

TEIGEN, Chief Justice (dissenting).

I dissent. The majority have cited applicable law but unless it is intended to find that the favored driver's duty to stop or slow his vehicle attached at a distance of a thousand feet or a half mile before the inferior vehicle reached the intersection they have not found at what point his duty to take steps to avoid a collision arose, nor have they measured his action after this point.

Section 39-10-24, N.D.C.C., and pocket parts, provides a preferential right of way at intersections may be indicated by stop or yield signs. Subsection 3 thereof provides that the driver of the vehicle approaching the yield sign shall in obedience thereto slow down to a speed reasonable for existing conditions and shall stop if necessary to yield the right of way to any vehicle in the intersection or approaching on another highway so closely as to constitute an immediate hazard. This section also provides that if such driver is involved in a collision with a vehicle after having driven past the yield sign such collision "shall be deemed prima-facie evidence of his failure to yield the right of way."

It is conceded that the driver of the automobile in which the deceased was riding was negligent and that his negligence was

a proximate cause of the collision which directly resulted in decedent's death. However, the plaintiff suing for the wrongful death did not elect to bring action against the driver of that vehicle, but has elected to sue the owner of the truck with which the vehicle the deceased was riding in collided. The owner's truck being driven by its employee at the time of the collision was upon a preferred highway to which access was controlled by yield signs, as authorized by § 39–10–24, N.D.C.C.

A driver upon a preferred highway, usually called an arterial or through highway, does not have an exclusive privilege which would require those crossing it to do so at their own risk but he must look for approaching vehicles upon an intersecting highway and his lookout must be such that he will see what a person in the exercise of ordinary care would see in like circumstances. Anderson v. Schreiner, N.D., 94 N.W.2d 294. Subject to this qualification, that he exercise reasonable care, he has the right to anticipate that a driver approaching upon an inferior highway will heed the yield sign by slowing down and stopping if necessary to yield the right of way to the favored vehicle in the intersection or approaching on the favored highway so closely as to constitute an immediate hazard. We have so held several times relative to stop signs. See Austinson v. Kilpatrick, N.D., 105 N.W.2d 258; Satterland v. Fieber, N.D., 91 N.W.2d 623; Marsden v. O'Callaghan, N.D., 77 N.W.2d 522. The same law is applicable to yield signs.

Neither driver was speeding. The truck was traveling at about 40 m. p. h., the Boeing vehicle from 50 to 60 m. p. h. These were permissible speeds. The Boeing vehicle, however, did not yield to the truck which was traveling upon the favored highway. Upon the record in this case I have no doubt that the defendant's driver was negligent in failing to have kept a proper lookout. He testified he did not see the subordinate vehicle until it was too late to avoid the collision. The question remains, however, whether it can be said that the negligence of the defendant's driver in failing to keep a proper lookout contributed proximately to the collision resulting in decedent's death.

In Anderson v. Schreiner, supra, where a similar factual situation existed, we said:

Whether an observing driver has been negligent, and whether his negligence was a proximate cause, depend on what he does after he has observed the circumstances and reached a judgment with respect thereto. The negligence of the non-observing driver is in not maintaining a lookout. In a sense this negligence is remote, because whether the failure to look proximately causes an injury depends, not upon the lack of observation, but upon what the driver does as a result of not looking. Therefore it is reasonable to say that if a jury may find that the conduct of an observing driver, who was aware of an approaching car and the possible danger at an intersection, was reasonable in the circumstances, they may also find that the conduct of a non-observing driver, who was unaware of the danger, was reasonable in identical circumstances, even though his ignorance of possible danger was due to his own negligence. The ultimate jury question is whether the conduct of the driver on the arterial highway was reasonable in the light of what he saw or should have seen. Because of his qualified right to rely on his preferred status there is no inescapable inference that a driver upon an arterial highway, who hadn't looked for cars approaching on an intersecting highway would have behaved any differently if he had looked. It follows that whether his negligence in not looking was a proximate cause, was a question for the jury. * * *

In the instant case a jury was waived and the case was tried on the question of liability to the court. On a de novo appeal from the judgment it becomes the duty of this court, as finders of the facts, to deter-

mine whether an observing driver would have been reasonably prudent in proceeding through the intersection under the circumstances. To say that the conduct of an observing driver in the circumstances was reasonable but that the conduct of a non-observing driver was not reasonable in identical circumstances would be logically inconsistent. It is therefore the duty of this court to find at what point the driver of the favored vehicle (the truck) if he had observed the approach of the inferior vehicle should take action to avoid collision · in the intersection. The Supreme Court of Michigan discussed this question in a similar case in McGuire v. Rabaut, 354 Mich. 230, 92 N.W.2d 299, at page 301 thereof, wherein they state:

The difficulties in this case, as in other arterial highway versus subordinate street cases, arise from an apparent conflict between 2 equally sound and equally applicable principles of law. The first is that a driver on an arterial highway is entitled to assume that subordinate drivers will yield him the right of way. He is not bound to anticipate unlawful or negligent acts on their part. At the same time, however, the favored driver must conform to the standard of due care imposed upon him as well as the rest of mankind, namely, that he shall exercise reasonable care for his own protection. But what does this actually mean in terms of arterial travel? Therein lies our problem. Its importance to the motoring public may justify its comprehensive re-examination.

It is clear, at the one extreme, that the favored driver is not permitted to lower his head, close his eyes, and charge blindly through intersections on the theory that such is his "right" simply because he is the favored driver. It was Justice Holmes who said that "such words as 'right' are a constant solicitation to fallacy." The favored driver's rights are not so broad. It remains his duty to exercise reasonable care under the circumstances. We explored this matter in Krause v. Ryan, 344 Mich. 428, 74 N.W.2d 20, 22, holding that:

"It is not necessary in approaching an intersection, as we said in Arnold v. Krug, supra, [279 Mich. 702] 707 [273 N.W. 322] that he 'have his car under such control * * * that he may stop at once and avoid collision with persons who may illegally come into his path.' Lacking notice otherwise, he may assume that others using the highways will comply with the rules of the road and properly posted signs and he is not guilty of contributory negligence in acting upon such assumption. It should not, however, be assumed from the foregoing that he may proceed blindly upon the arterial, secure in the supposition that he can do no wrong. He must remain alert to the hazards surrounding him and with which he is confronting others. We do not propose to attempt an enumeration of the various actions required of him. So far as the question in this case is concerned, he is undoubtedly required to make observation of the traffic apparently to cross his path from intersecting streets and to act reasonably in the light of such observation."

The favored driver is thus not required to have his car under such control as to be able to avoid collision with a subordinate driver coming illegally into his path. At what point, then, does the second principle (that of exercising reasonable care for his own protection) come into operation, requiring him to take steps to avoid collision with a subordinate driver? Only at that point when his continuing observations (which he must make, despite the fact that he is on an arterial highway) reveal, or should reveal to the reasonably prudent man, an impending danger. It is at this time that his duty of care with respect to the subordinate driver arises, and his post-observation negligence, or lack thereof, is measured by his actions after this

point. Consequently, in the case before us the favored driver was entitled to assume, as he approached the Hastings intersection, that his right of way would not be contested by a subordinate driver. He was entitled to rely upon this assumption until it became clear to him (or, until, as a reasonable man, considering pertinent surrounding circumstances of traffic and terrain, it should have been clear to him) that a subordinate driver was going to challenge or obstruct his right of way. At this point his duty to attempt to avoid the impending collision began. It is from this point onward, and not before, with respect to a crossing subordinate driver appearing in his path, that we scrutinize his acts to determine whether or not he is guilty of negligence for failure to act as a reasonably prudent person, and, in all fairness to him, we must measure his conduct in the light of the emergency then presented, if not of his making.

In determining the degree of care required of a motorist who proceeds into an intersection protected by electric signals, we held as follows in Kuntz v. Stelmachuk, N.D., 136 N.W.2d 810, 816:

> Whether a driver's conduct, on reaching an intersection protected by electric signals, measures up to the standard of care required under the circumstances must be determined by the facts of the case which exist at the time of such conduct. While the presence of traffic signals at the intersection lessens the danger and thus lessens the degree of care required of a motorist who proceeds on a proper light, the existence of such lights does not do away with the necessity of some care and caution on the part of such motorist. He still must use care commensurate with the danger that continues to exist. He cannot place blind reliance upon the light, or upon conditions which he observes prior to entering the intersection. * * *

In Henke v. Peyerl, N.D., 89 N.W.2d 1, we held, at Syllabus 4, as follows:

> A driver upon a through highway is entitled to assume that those approaching it will obey the law and stop. He is not obliged to have his car under such control at each intersecting road that he may stop at once and avoid a collision with persons who may illegally come into his path.

And in the text thereof, at page 7, we said:

> The operator of a vehicle on an arterial highway has a right to assume that one approaching on an intersecting highway or crossroad will drive at a proper speed, and will respect the former's right-of-way and stop before entering or crossing the arterial highway. Though it is not negligence for a favored driver to act on assumptions of this nature until he has or reasonably should have knowledge to the contrary, he is bound, after acquiring such knowledge, to exercise the care of an ordinarily prudent person. * * *

The above are reasonable and practical applications of the law. An exhaustive annotation on this and other similar questions is found in 3 A.L.R.3rd 180. Many cases are set forth in this annotation which hold that failure to stop at a stop sign or signal was the sole proximate cause of the ensuing collision with a vehicle on a favored highway. See § 47, page 450. A favored driver is not required to have his car under such control that he may bring it to a stop at each intersection he approaches upon the theory that some reckless driver will dispute his passage. This would bring traffic on arterial highways for all practical purposes to a complete stop. At each successive intersection the arterial driver would have to slow down and at blind corners he would be required literally to ease his vehicle forward into the intersection until he crosses the threshold of vision for the subordinate highway lest he be unable to stop if sufficient danger threatened. The purpose of through highways is to move volumes of

traffic at relatively high speeds. Such purpose cannot be accomplished if our application of the standard of due care does not take into account the function of the arterial or through highway. Due care, for the driver on a through highway, includes the right that he will be afforded the right of way. This assumption may be relied upon by him until he is aware, or as a reasonably prudent driver should be aware, that his right of way is being challenged. Under the law as discussed above, which I think should be applied in this case, I feel the judgment of the trial court dismissing the action should be affirmed.

The trial court found that the driver of the defendant's truck was under no obligation to sense danger until the vehicle in which the deceased was riding had reached a point distant from the intersection within which the vehicle in which the deceased was riding could brake to a stop, which point was 128 feet from the intersection, and that the driver of the defendant's truck was entitled to assume, had he seen the other vehicle, that the driver of that vehicle would respect his right of way until he became aware the latter was not going to do so. The trial court also found that had the driver of the defendant's truck seen the vehicle in which the deceased was riding before he reached a point 128 feet east of the intersection he still would have been unable to avoid the collision. These findings by the trial court have support in the evidence. Giving appreciable weight to the trial court's findings, I adopt its findings as correct.

I find that when the subordinate vehicle was at a point about 128 feet distant from the intersection a reasonably prudent person driving the defendant's truck upon the through highway would sense impending danger. At this point a duty of care arose with respect to the subordinate vehicle. The post-observance negligence—or lack thereof —must be measured by defendant's driver's actions after this point. Taking into consideration the respective speeds and all other circumstances the defendant's vehicle was then too close to the intersection to avoid a collision. I therefore conclude that similar conduct of an observing driver, who was aware of the approaching vehicle, in which the deceased was riding and the possible danger at the intersection, would have been reasonable in the circumstances and that, therefore, the conduct of the defendant's non-observing driver, who was unaware of the danger, was also reasonable even though his ignorance of possible danger was due to his own negligence. For these reasons, I find the negligence of the defendant's driver in not keeping a lookout was not a proximate cause of the collision resulting in the death of plaintiff's deceased. I would affirm the judgment.

KNUDSON, J., concurs in the dissent of the Chief Justice.

On Rehearing.

STRUTZ, Judge.

The respondent has filed a petition for rehearing. First, it contends that the opinion of the majority in this case reverses the principle that the findings of a trial court, in a case tried to the court without a jury, will be given appreciable weight. It also inquires if the decision of the trial court was clearly against the evidence—as respondent contends it must be in order for this court to reverse—just where the evidence was contrary to the trial court's decision.

We believe that respondent is laboring under a misapprehension of the scope of an appeal in a case tried to the court without a jury, in which a demand for a trial de novo is made. In North Dakota, when demand is made for trial de novo and properly included in the statement of the case, as was done in this case, this court is required to find the facts anew. We have held that, in finding the facts anew, we will give appreciable weight to the findings of the trial court. But the principle of giving appreciable weight to findings of the trial court will not relieve us of the

duty and responsibility of finding the facts anew and of applying the law to those facts. Our statute specifically provides that on demand for trial de novo in a case tried without a jury "the supreme court shall try anew the questions of fact." Sec. 28–27–32, N.D.C.C.

Thus it is the duty of this court on appeal, in any action tried by the court without a jury, to try anew the questions of fact if the appellant demands a retrial of the entire case. And, in applying the principle that in reviewing a case tried without a jury, appreciable weight will be given to the findings of the trial court, this court will not avoid its lawful duty of trying anew all questions of fact in the entire case. Spielman v. Weber (N.D.), 118 N.W.2d 727.

The cases cited by the respondent in support of its contention that if there is any evidence to support the findings of the trial court, this court must affirm, are cases from States that do not have a trial de novo statute similar to that of North Dakota. The rule it would have us apply is quite similar to the rule we apply in appeals from a judgment based upon a verdict of a jury. Under the so-called Newman law, Section 28–27–32, North Dakota Century Code, on an appeal from a judgment based upon the findings of a trial court we are prohibited from applying that rule. Instead, we must find the facts anew. This conclusion is supported by a long line of decisions.

The next point raised by the respondent relates to a statement in the dissenting opinion in this case that it is the duty of this court to determine "at what point the driver of the favored vehicle (the truck) if he had observed the approach of the inferior vehicle should take action to avoid collision in the intersection."

Respondent concedes that the driver of the defendant's vehicle was negligent in failing to keep a proper lookout, for it says: "For the purposes of this petition no ex-

ception to the court's ruling that there was negligence on the part of the Cardinal Petroleum Company driver for failure to keep a proper lookout will be taken." But respondent then asks just where a driver on a favored highway stands in relation to a vehicle on a servient highway, and at what point in his approach to the intersection he becomes negligent in proceeding without due care.

 The highway upon which the defendant's vehicle was being operated was not a controlled access highway. It was merely a county highway, as was the intersecting highway on which the Boeing vehicle was being driven. While the defendant's equipment was being driven on a highway which was made the favored roadway by the placing of "yield" signs on highways which crossed it, that fact did not give to the operator of the defendant's equipment the right to proceed down that highway without due care and without maintaining a proper lookout for other vehicles entering it from side roads. This is clearly evidenced by the fact that a sign placed on such favored highway 500 feet from the intersection notified drivers on the favored highway that there was a junction ahead. Thus the defendant did not have an absolute right of way over vehicles approaching from a side road. Under the rules of the road, the Boeing vehicle in which the plaintiff's intestate was riding was required to yield, and the primary duty to avoid collision with a vehicle on the favored highway rested upon the Boeing driver. However, the driver on the favored highway also was required to exercise due care and to maintain a proper lookout for traffic approaching the intersection from inferior highways.

 The defendant's driver had the duty of exercising due care in approaching the intersection. We find that when he was warned by a sign 500 feet from the junction that he was approaching an intersection, it became his duty to determine whether there was any traffic approaching. As we said in Anderson v. Schreiner

(N.D.), 94 N.W.2d 294, the negligence of a nonobserving driver is in not maintaining a lookout. Whether such negligence is remote or is a proximate cause of the collision which occurred in the intersection depends upon what he does as a result of not maintaining a lookout. Here, the defendant's driver continued into the intersection without slowing his speed in the slightest. Had he looked, he would have seen that the driver of the Boeing car was negligently failing to yield. Thus the question is whether the conduct of the defendant's driver was reasonable in the light of what he would have seen had he maintained a proper lookout. When he saw—or should have seen—the other driver negligently failing to yield, as a reasonable person he would have taken steps to avoid the collision. Under these circumstances, his negligence in failing to observe resulted in his failure to take steps to avoid the collision, as he reasonably would have done had he seen the Boeing vehicle.

■■■ The duty of the driver of the Boeing vehicle to yield the right of way did not give the defendant's driver the right to drive without exercising due care. A motorist driving on a highway protected by "yield" signs cannot proceed on the assumption that he has the absolute right of way under all circumstances, and that every other driver who is about to enter the intersection from an inferior highway will, without question, yield the right of way to him. In other words, the driver of the defendant's vehicle,, who had the right of way, could not exercise that right in an arbitrary manner and without paying some attention to whether there was any other vehicle approaching the intersection because an approaching vehicle might be operated in a negligent manner. The superior privilege of having the right of way did not give the driver of the defendant's vehicle the right to wholly disregard the rules which required him to drive with due care and to keep a reasonable lookout for other traffic. The duty to avoid an accident rested upon both of the drivers, even though one of such drivers was required to exercise a greater degree of care in the exercise of due care than was the driver on the favored highway.

The petition for rehearing is denied.

ERICKSTAD and PAULSON, JJ., concur.

TEIGEN, Chief Judge (on petition for rehearing).

Again, the majority has correctly stated the question before the court but has failed to answer it. They state the question in their opinion on petition for rehearing, as follows:

"Thus the question is whether the conduct of the defendant's driver was reasonable in the light of what he would have seen had he maintained a proper lookout."

They then attempt to answer it by stating:

"When he saw—or should have seen—the other driver negligently failing to yield, as a reasonable person he would have taken steps to avoid the collision."

However, they have found no facts from which to conclude that an observing driver could have taken effective steps to avoid the collision after the point where he would have seen the other driver was "negligently failing to yield." Nor, have they found at what point an observing driver would have seen that the other driver was "negligently failing to yield."

The majority has alluded to two additional facts as additional reasons for their holding, (1) that there was a "junction" sign 500 feet from the intersection; and (2) the highway upon which the defendant's vehicle was being operated was not a "controlled access" highway, but that it was merely a county highway. Neither of these facts has any bearing on the questions before the court in this case. The record clearly establishes that defendant's driver was familiar with the highway; he knew the

intersection, its location, and that it was controlled by "yield" signs and the rights and duties of drivers upon either classification of highway, county or "controlled access" are the same, where "yield" signs are lawfully in place.

This appeal is here for trial de novo. We are to find the facts. The burden of proof is upon the plaintiff to prove her cause of action. If the record does not establish by a preponderance of the evidence that it was not reasonable for an observing driver to have driven the truck under these circumstances as the defendant's driver drove it, and that such negligence was a proximate cause of the injury, the plaintiff has failed to sustain the burden of proof and cannot recover. In my opinion the majority has not found from the evidence facts that establish liability.

In the additional syllabus, numbered 6, added on the opinion on petition for rehearing, the majority says:

"* * * it is reasonable to assume that * * * he would have slowed * * * when he saw * * *"

I think this is a fair assumption. However, the syllabus does not establish that such action would have avoided the collision. I think the record in this case establishes it was then too late.

I would grant the rehearing.

KNUDSON, J., concurs.