Frances KNUDTSON, individually and as personal representative of the Estate of Oscar L. Knudtson, Deceased, Plaintiff and Appellant,

v.

Phyllis McLEES, Defendant and Appellee.

Civ. No. 890033.

Supreme Court of North Dakota.

July 17, 1989.

Fred E. Whisenand of McIntee & Whisenand, P.C., Williston, for plaintiff and appellant.

Paul W. Jacobson of Bjella Neff Rathert Wahl & Eiken, P.C., Williston, for defendant and appellee.

VANDE WALLE, Justice.

This is an appeal from a judgment dismissing the plaintiff's negligence claim. We affirm.

On November 1, 1985, the defendant, Phyllis McLees, was driving south on Main Street in Watford City. Main Street runs north and south and is protected from traffic on Third Avenue by stop signs. Estella Stavn was driving east on Third Avenue. She stopped at the stop sign, but could not see if any traffic was coming from the north because of a school bus parked on the west side of Main Street, just north of Third Avenue. Stavn proceeded slowly into the intersection when she saw McLees directly to her left. The front bumper of the Stavn vehicle struck the McLees vehicle on the rear passenger side. The McLees vehicle veered to the right and struck Oscar Knudtson, who was standing beside his vehicle which was parked on the west side of Main Street, a short distance south of Third Avenue. Knudtson and his wife,

Frances,[1] brought this action to recover for injuries sustained as a result of the accident.[2]

The case was originally scheduled to be tried before a jury. During discovery it was disclosed that McLees did not have, nor had she ever had, a driver's license. McLees submitted a motion *in limine* requesting that no evidence be introduced regarding whether or not McLees had a driver's license. The court granted the motion, stating that it was marginally relevant but that its relevance was outweighed by prejudice and possible confusion of the issues.

The parties subsequently entered into a stipulation waiving a trial by jury. After hearing the evidence the trial court found that "less than two seconds elapsed between the time of the initial collision between the Stavn and McLees vehicle and the collision between the McLees vehicle and Mr. Knudtson." It also found that this amount of time was insufficient for McLees to react and avoid the collision with Mr. Knudtson. It therefore concluded that there was no negligence on the part of McLees.

On appeal, Frances Knudtson raises two issues: first, whether the trial court erred in not finding McLees negligent as a matter of law, and, second, whether the trial court erred in concluding that failure of McLees to maintain a driver's license did not contribute to or was otherwise a proximate cause of the accident.

In arguing that McLees was negligent as a matter of law, Knudtson argues there are two separate acts of negligence. The first is that expert testimony established that McLees and Stavn had three or four seconds in which to observe each other before the two entered the intersection, and Knudtson claims that because McLees failed to see the Stavn vehicle and maneu-

ver to avoid the accident, McLees was negligent. She also claims that McLees was negligent in failing to properly react to the collision between the McLees and Stavn vehicles.

■ Whether negligence exists is a question of fact. *Benjamin v. Benjamin*, 439 N.W.2d 527 (N.D.1989). Findings of fact will not be set aside unless clearly erroneous. Rule 52(a), N.D.R.Civ.P. A finding of fact is clearly erroneous if it has no support in the evidence or although there is some support in the evidence, we are nevertheless left with a definite and firm conviction that a mistake has been made [*Knutson v. Jensen*, 440 N.W.2d 260 (N.D.1989)]; or if it was induced by an erroneous view of the law [*Manz v. Bohara*, 367 N.W.2d 743 (N.D.1985)].

In arguing that McLees was negligent as a matter of law, Knudtson relies on *Kelmis v. Cardinal Petroleum Co.*, 156 N.W.2d 710 (N.D.1968), and *Anderson v. Schreiner*, 94 N.W.2d 294 (N.D.1959). These cases are either consistent with the trial court's decision in this case [*Anderson*] or distinguishable from this case [*Kelmis*].

In *Anderson*, the plaintiff's car, which was traveling on a road protected from side roads by stop signs, collided with the defendant's vehicle, which failed to stop at a stop sign. In determining that plaintiff was negligent as a matter of law, the appellate court stated that plaintiff was traveling at approximately 50 miles per hour and had a clear view of defendant's car for more than 1,200 feet. In upholding the verdict against the defendant, however, the court stated that upon the record the jury could have found that the plaintiff's negligence did not contribute proximately to the cause of the plaintiff's injuries:

"We think the correct answer to the problem is to be found in the fact that two separate and distinct types of negli-

---

1. Several months prior to trial, Mr. Knudtson died. Pursuant to a stipulation between the parties, Frances Knudtson, as personal representative of the estate of Oscar L. Knudtson, was substituted as plaintiff in place of Mr. Knudtson.

2. Stavn settled with Knudtson prior to the commencement of this action.

gence are involved. Whether an observing driver has been negligent, and whether his negligence was a proximate cause, depend on what he does after he has observed the circumstances and reached a judgment with respect thereto. The negligence of the non-observing driver is in not maintaining a lookout. In a sense this negligence is remote, because whether the failure to look proximately causes an injury depends, not upon the lack of observation, but upon what the driver does as a result of not looking. Therefore it is reasonable to say that if a jury may find that the conduct of an observing driver, who was aware of an approaching car and the possible danger at an intersection, was reasonable in the circumstances, they may also find that the conduct of a non-observing driver, who was unaware of the danger, was reasonable in identical circumstances, even though his ignorance of possible danger was due to his own negligence. The ultimate jury question is whether the conduct of the driver on the arterial highway was reasonable in the light of what he saw or should have seen. Because of his qualified right to rely on his preferred status there is no inescapable inference that a driver upon an arterial highway, who hadn't looked for cars approaching on an intersecting highway would have behaved any differently if he had looked. It follows that whether his negligence in not looking was a proximate cause, was a question for the jury. *Satterland v. Fieber*, N.D., 91 N.W.2d 623 [(1958)]." 94 N.W.2d at 299.

Likewise, upon the record in this case the factfinder found that McLees would have behaved no differently had she seen the Stavn vehicle.

In *Kelmis*, a car and a truck collided at an intersection. The road on which the car was being driven had a yield sign, indicating that traffic on that road was to yield to traffic traveling on the road on which the truck was being driven. The plaintiff's decedent, who was a passenger in the car,

was killed and plaintiff sued the trucking company which owned the truck for wrongful death. The trial court dismissed her claim and she appealed. On appeal—at the time the standard of review still was trial de novo [see Section 28–27–32, N.D.C.C., prior to repeal in 1971]—this court, in a 3–2 decision, reversed the trial court and found the defendant negligent as a matter of fact, not law, stating:

"The fact that a driver on approaching an intersection on a highway protected by 'yield' signs knows that he has the right of way, does not give him the right to proceed without due care by failing to keep a proper lookout for others who may operate their vehicles in a negligent manner while entering the favored highway. *Anderson v. Schreiner* (N.D.), 94 N.W.2d 294 [(1959)]. It is true that a driver on such favored highway has the right to assume that others will honor his right of way. But that does not allow him, because of such right, to drive without due care. *Kuntz v. Stelmachuk* (N.D.), 136 N.W.2d 810 [(1965)].

.    .    .    .    .

"We find that the fact that the driver of defendant's vehicle did not actually see the [other] vehicle approaching the intersection, under the circumstances, although it was in plain sight [for half a mile] and could have been seen had he looked, was negligence on his part. The record clearly establishes that there were no distracting circumstances which might excusably have diverted his attention.

.    .    .    .    .

"We find from this evidence that defendant driver's failure to decrease his speed when he saw or should have seen that the [other] driver was not slowing for the purpose of yielding, was negligence, and that such negligence was a proximate cause of the collision that followed. Where the driver on a favored highway sees, or in the exercise of due care should see, that the other vehicle is

failing to yield as required by law, he, himself, is under a duty of slowing down to avoid a collision. We find that the failure of defendant's driver to do so was negligence and that his negligence under the circumstances of this case proximately contributed to the accident." 156 N.W.2d at 715–716.

*Kelmis* thus is distinguishable in that it was decided when this court applied the de novo standard of review, rather than the clearly erroneous standard under Rule 52(a), N.D.R.Civ.P.[3] Significantly, the vehicle in *Kelmis* was visible for half a mile when the vehicles were traveling between 40 and 55 miles per hour. Presumably, that means that there was at least 30 seconds to observe the vehicle in *Kelmis*. In this case there was only three to four seconds.

*Kelmis* does not stand for the proposition that failure to keep a proper lookout is always, as a matter of law, negligence which is a proximate cause of the accident. Rather, "no hard and fast rule can be promulgated for the purpose of determining whether a motorist is guilty of contributory negligence in failing to stop, swerve or take other action in order to avoid a collision. Each case must be adjudicated upon its own facts and circumstances." *Born v. Osendorf,* 329 F.2d 669, 671 (8th Cir.1964).

Knudtson also argues that McLees was negligent in the manner in which she reacted to the collision with the Stavn vehicle. Had McLees driven her vehicle straight ahead, Knudtson claims, she would have avoided hitting Mr. Knudtson.

In *Bjerke v. Heartso,* 183 N.W.2d 496, 502 (N.D.1971), this court stated in response to plaintiff's claim that the defendant Heartso did not exercise due care when he met defendant Lysne's vehicle out on the highway:

"Because of the bend in the road, it is evident that Lysne's improper position would not have become apparent to Heartso until he already was in peril. Here was a classic case of sudden emergency. The oncoming vehicle was in Heartso's lane. With only two or three seconds to act, including reaction time, what should he do: Turn into the lane vacated by Lysne? Simply apply brakes and rely on the offender to take evasive action? Turn toward the snow-concealed hazards of the ditch? What he did in that awful fleeting moment cannot be judged by normal standards of care. In sudden, unheralded confrontation with disaster, there is no time for judicious balancing of alternatives. The course chosen in imperative haste, while mind and muscle are horror-stricken, must be given every charitable consideration."

It is simple to say after the fact what should have been done in order to avoid further injury. But that is not how cases are to be analyzed. The evidence in this case indicated that only two seconds elapsed between the time of the collision between the McLees and Stavn vehicles and the time when the McLees vehicle struck Mr. Knudtson.

We no longer find facts anew. We conclude that under the facts and circumstances of this case the trial court's conclusion that McLees was not negligent was not clearly erroneous.

Knudtson's final argument is that the failure of McLees to maintain a driver's license contributed to or was a proximate cause of the accident. He contends it was error for the trial court to grant McLees's motion *in limine* requesting that no evidence be admitted regarding whether McLees had a driver's license.

3. Furthermore, *Kelmis* was decided at a time when the plaintiff's contributory negligence was a bar to recovery. See Section 9–10–06, N.D. C.C., prior to its amendment in 1973. The court in *Kelmis* agreed with the trial court that the driver of the car was negligent and that such negligence was a proximate cause of the colli- sion, but noted that the deceased, the spouse of the plaintiff, was a passenger in the car and the negligence of the driver could not be imputed to a passenger riding with the driver. The court observed there was no evidence of negligence or contributory negligence on the part of the deceased which would bar recovery.

The motion *in limine* was made and granted at a time when a jury trial was expected. Ultimately the case was heard as a bench trial. During cross-examination of McLees, the following question was asked and answered:

"Q. [Whisenand]: And you did not have—well, you have never had a drivers license, have you?

"A. No, I have not."

This question was never objected to and is part of the record. Thus Knudtson's argument that it was error to not admit evidence of the status of McLees's licensure is without merit. It is apparent from the trial court's addendum to its memo opinion that it did consider lack of a license.[4]

■ Furthermore, we held in *Ross by Kanta v. Scott,* 386 N.W.2d 18 (N.D.1986), that evidence indicating a person did not have a valid driver's license is inadmissible to prove that person acted negligently on the occasion in question. Knudtson asks us to interpret that decision as recognizing an exception to the rule against admitting evidence of no valid driver's license when it has been established that a causal connection exists between the lack of a valid driver's license and the injuries complained of. But even if we were to carve out that exception, it would have no application here. The causal connection, Knudtson contends, is that an experienced driver could easily have avoided the accident. McLees has been driving for 20 years. Since 1977, she has been operating a motor vehicle on a daily basis. Prior to the accident in question, McLees never had been involved in an accident. We cannot say that McLees lacked any more experience than someone who had a license and had been driving for 20 years. On the facts of this case, there simply is no causal connection between the lack of a driver's license and the accident complained of.

---

**4.** That addendum states, "Admittedly McLees an unlicensed motorist but was that fact in any way conducive to the accidents? No. I find the evidence, if any, on that matter insufficient,

The judgment is affirmed.

ERICKSTAD, C.J., LEVINE and MESCHKE, JJ., and VERNON R. PEDERSON, Surrogate Justice, concur.

VERNON R. PEDERSON, Surrogate Justice, sitting in place of GIERKE, J., disqualified.

speculative and non-persuasive on any allegation that license failure in some manner contributed to the accidents or was otherwise proximately connected therewith."