Betty M. ARMSTRONG, Plaintiff
and Respondent,

v.

Harold A. MILLER and Melvin J. Mickel-
son, Defendants and Appellants,

and

Barney's Transport, Inc., Defendant
and Respondent.

Civ. No. 8680.

Supreme Court of North Dakota.

Sept. 1, 1971.

Nilles, Oehlert, Hansen, Selbo & Magill, Fargo, for appellant Melvin J. Mickelson.

Wattam, Vogel, Vogel & Peterson, Fargo, and Dosland & Nordhougen, Moorhead, Minn., for appellant Harold A. Miller.

Tenneson, Serkland, Lundberg & Erickson, Fargo, for plaintiff and respondent.

Harold A.. Halgrimson, Fargo, and Garrity, Cahill, Gunhus, Streed. & Grinnell, Moorhead, Minn., for defendant and respondent Barney's Transport, Inc.

STRUTZ, Chief Justice.

The plaintiff brings this action as the surviving wife of Ronald D. Armstrong, for his wrongful death resulting from a motor vehicle accident which occurred on Memorial Day, 1969, on Highway No. 81 south of Fargo. At the time of the accident the plaintiff's decedent was operating his automobile in a northerly direction on the said highway. The defendant Mickelson was driving south and a Ford milk truck owned by the defendant Barney's Transport, Inc., and operated by the defendant Miller, was also being driven in a southerly direction on said highway. This milk truck had been borrowed by the defendant Miller from the defendant Barney's Transport, Inc., some ten days before the date of the accident, when one of Miller's own milk trucks had broken down. At the time of the collision, Miller was on his way to pick up milk from two farmers living on the North Dakota side of the border, after which he intended to complete his picking up of milk on the Minnesota side.

At the time of the incident which resulted in the death of the decedent, dedendant Mickelson, with his wife, mother and sister, was on his way to Sunset Memorial Gardens located south of Fargo.

Highway No. 81, at the scene of the accident, is straight and level, and the weather on the day in question was clear, sunny and dry. It appears that the defendant Mickelson was traveling at a speed of approximately sixty-five miles an hour until he reached a point about one mile from the entrance to the cemetery. He testified that at that point he reduced his speed to approximately forty miles per hour and that when he was about 150 feet from the scene of the accident he further braked his vehicle. As he did so, he heard the squeal of brakes behind him and at that time the defendant Miller was about one and one-half car lengths to his rear.

The defendant Miller testified that he was driving south on Highway No. 81 at approximately forty to forty-five miles per hour. When he reached a point about 500 feet from the accident scene another southbound vehicle traveling between him and the defendant Mickelson's car suddenly turned to the left, passed the Mickelson vehicle, and proceeded on in a southerly direction. At that time the Mickelson vehicle seemed to be going very slowly or was stopped entirely, and was located just

north of the entrance to a road leading to the rear of the cemetery. When Miller reached a point about 200 feet from the Mickelson car he braked heavily, but the truck he was driving then went out of control. The Miller milk truck laid down 112 feet of uneven skid marks, from the rear wheels only, and then cut to the left across the northbound lane of traffic on the east side of the highway, colliding with the automobile driven by the plaintiff's decedent. Miller asserts that the brakes on the milk truck were defective, and that after laying down the uneven skid marks the uneven braking activated the power steering first to the right, then to the left, tearing the steering wheel from Miller's grasp. Miller offered to prove that if the truck brakes had been operating properly the truck would have left straight skid marks by both the front and rear wheels, which offer was denied. He further testified that there had been no prior indication that the brakes and power steering on the milk truck which he had borrowed would react improperly. The driver of a vehicle following the defendant Miller testified that he saw Miller skid straight ahead and then saw him veer to the left; that at no time did he see any signal or brake light on the rear of the defendant Mickelson's car.

The jury brought in a verdict against the defendants Miller and Mickelson for one hundred sixty thousand dollars, and dismissed the complaint against the defendant Barney's Transport, Inc., owner of the truck driven by Miller. The defendants appeal, each specifying errors of law which he complains of. The defendant Mickelson specifies that the evidence was insufficient to support the verdict and the judgment of the jury, pointing out wherein the evidence was insufficient.

■ This Court has often held that on an appeal from a judgment in an action tried to a jury, the appellate court must view the evidence in the light most favorable to the verdict. Koland v. Johnson, 163 N.W.2d 330 (N.D.1968); Holten v. Ams-

den, 161 N.W.2d 478 (N.D.1968); Degenstein v. Ehrman, 145 N.W.2d 493 (N.D. 1966); Ternes v. Farmers Union Central Exchange, 144 N.W.2d 386 (N.D.1966); Anderson v. Stokkeland, 125 N.W.2d 665 (N.D.1964); Kern v. Art Schimkat Construction Co., 125 N.W.2d 149 (N.D.1963); Serbousek v. Stockman Motors, Inc., 106 N.W.2d 879 (N.D.1960).

■ The established rule is that questions of negligence and proximate cause are questions of fact for the jury unless reasonable minds can draw but one conclusion from the evidence. Chicago, M., St. P. & P. R. Co. v. Johnston's Fuel Liners, 122 N.W.2d 140 (N.D.1963). In the light of this rule, is the evidence sufficient to justify the verdict of the jury against the defendant Mickelson?

■ There is evidence in the record that the defendant Mickelson gave no signal of his intention to stop or to make a right turn. Although he did testify that he looked into his rearview mirror to determine if any vehicles were following him, he also testified, at another time, that he did not look into the rearview mirror to determine if there was other oncoming traffic until after he had applied his brakes and slowed down, at which time the truck of the defendant Miller was only between 15 to 40 feet to his rear. There is also evidence that defendant Mickelson had stopped his vehicle in the southbound lane of traffic on the highway, although the evidence on this point is conflicting. Our statute provides that no person shall stop a vehicle on the highway, outside of a business or residence district, when it is practical to stop such vehicle off the highway. Section 39–10–47, N.D.C.C. From the evidence in the record, the jury had a right to find that the defendant Mickelson had stopped his vehicle on the highway and the question of negligence of the defendant Mickelson was clearly one for the jury. We cannot say that reasonable minds could draw but one conclusion from the above evidence. Therefore, the trial

court did not err in ordering judgment for the plaintiff and against the defendant Mickelson, on the jury verdict.

We will now turn to the errors of law specified and complained of by the appellants. The refusal of the trial court to allow the defendant Miller to testify as to the result of a test conducted to determine the stopping distances under the same or similar conditions with the same model truck as the one he was operating at the time of the accident, is specified as error. The defendant Miller testified that about one month before trial he had conducted a braking and stopping test with a truck which was similar to the truck he was driving at the time of the accident. The test was conducted on Highway No. 75 in Minnesota, a concrete highway, which is claimed to be similar to Highway No. 81 in North Dakota. The Court sustained the objection to the introduction of the results of this test on the grounds that no proper foundation had been laid. The defendant then made an offer of proof to the effect that evidence of the test would show that the skid marks were made by the front wheels of the milk truck he was driving and that the rear wheels made skid marks of 88 feet when the brakes were applied at forty-five miles per hour.

■ This Court has held that evidence of relative experiments are admissible where such experiments are shown to have been made under conditions substantially similar to those which prevailed at the time of the occurrence to which they relate. Fisher v. Suko, 111 N.W.2d 360 (N.D. 1961).

■ However, the above case also points out that admission of evidence of experiments is primarily within the discretion of the trial court and the court's exercise of that discretion will not be disturbed on appeal unless an abuse of that discretion is clearly shown. See also, Larson v. Meyer, 135 N.W.2d 145 (N.D.1965), and Larson v. Meyer, 161 N.W.2d 165 (N.D. 1968).

■ The defendant Miller, in the case at bar, in attempting to lay a foundation for the introduction of the results of such test, did not show whether the milk tank at the time of the test was loaded or empty; he did not show whether the tires were old or new, or whether they were inflated to approximately the same pressure as that of the tires on the truck at the time of the accident; nor did he attempt to show that the highway on which the test was conducted was of the same smoothness as was the surface of Highway No. 81 at the time of the accident. Whether the foundation laid for the introduction of evidence of such test was sufficient must, of necessity, be left to the sound discretion of the trial court and the appellate court will not reverse the determination of the trial court made in the exercise of its discretion, in the absence of a clear showing of abuse of such discretion. In the light of the evidence in this case, the trial court clearly did not abuse its discretion in refusing to admit evidence of the experiment offered by the defendant Miller.

■ The appellant next asserts that the trial court erred prejudicially when it held that Section 170.54 of the Minnesota Statutes Annotated did not apply in this case and specifically instructed the jury that appellant Miller was not the agent of Barney's Transport, Inc., the owner of the truck.

"170.54 *Driver deemed agent of owner*. Whenever any motor vehicle shall be operated within this state, by any person other than the owner, with the consent of the owner, express or implied, the operator thereof shall in case of accident, be deemed the agent of the owner of such motor vehicle in the operation thereof."

Clearly, the intention of the Minnesota Legislature in enacting the above statute was that its provisions should apply only in case the operation of a borrowed motor vehicle was within the state of Minnesota, for it expressly limits the application of

the provisions of the statute to a situation when a motor vehicle is operated "within this state." It was never intended that its provisions should be applied to every case of a Minnesota owner permitting his vehicle to be operated by another at any place in the world. In the case before us, the borrowed truck was not being operated by Miller "within the state" of Minnesota, for the accident took place in the state of North Dakota.

This Court has held that the question of whether the owner of an automobile is liable for damages caused by its negligent operation by another is determined by the law of the State where the damage occurs. Pearson v. Erb, 82 N.W.2d 818 (N.D. 1957).

On the issue of agency of a driver, we have held that in this state proof of ownership of the automobile alone does not establish or prove agency of the driver. Vaux v. Hamilton, 103 N.W.2d 291 (N.D. 1960). The record in this case is clear that while the defendant had borrowed the milk truck from Barney's and that the truck belonged to Barney's at the time of the accident, Miller was using the truck exclusively for his own purposes. No agency was proved and the court did not err in refusing to give the requested instruction.

The defendant Miller also asserts that the trial court erred in not giving certain requested instructions relative to the liability of an owner who rents or leases the vehicle to another. Instead of giving the requested instruction, the trial court instructed the jury that the owner of a vehicle who entrusts it to another person for operation must take certain precautions to see that the vehicle is not defective and must use ordinary care to see that it is not in such a condition as to be dangerous for use on the public highway. He further instructed that the owner's failure to use ordinary care to see that such vehicle is not in a defective condition constitutes negligence and if the vehicle is permitted to

be used on the highways in such condition the owner is responsible for injuries resulting from its use, if he could have discovered the defective condition by the exercise of ordinary care; that in order to be held liable, it is not necessary that the owner must have foreseen the manner in which the injury might occur, and that the owner's liability would not be dependent upon whether Miller was driving the borrowed vehicle gratuitously or for a consideration.

We have repeatedly held that instructions of the trial court must be considered in their entirety, and if the whole charge, when considered together, correctly advises a jury as to the law applicable to the case, there is no error even though the requested instruction which was refused was a correct statement of the law. Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968); Hook v. Crary, 142 N.W.2d 140 (N.D.1966); Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11 (1949).

We have examined the instructions as given by the trial court in this case and find that although the instructions were not given in the language requested by the defendant Miller, the instructions which were given are a correct statement of the law on the matter of the liability of an owner who rents or leases his vehicle to another. No prejudice or error could have resulted to the defendant by the failure of the court to give the instruction as requested, and these specifications are found to be without merit.

The defendant Miller next asserts that the trial court erred in refusing to give his requested instruction relative to damages for future detriment reduced to present worth. The instruction which the defendant requested reads as follows:

"If you should find that the plaintiff suffered a pecuniary loss or detriment because of Ronald Armstrong's death which the plaintiff will suffer in the future, you must take into account

the present cash value of such future loss or detriment and reduce the gross amount of such damages to its present cash value. In determining the present cash value of such future loss, you will calculate on the basis that any sum you might award will be handled and invested with reasonable wisdom and frugality, and that all of it, except as currently and reasonably needed to compensate for such lost benefits, will be kept so invested as to yield the highest rate of interest consistent with current interest rates and reasonable security. The present cash value will, of course, be less than the amount you find to be the loss of such future benefits. As an illustration: assuming a reasonable rate of interest to be eight percent, the present worth of $1,000.00 payable one year from today is found by dividing $1,000.00 by 1.08; if payable in two years, by dividing by 1.16; if payable in three years, by dividing by 1.24 and so on, covering the entire period of time for which the damages would be distributed."

The trial court gave the usual instruction on damages and advised the jury that the measure of damages for a breach of an obligation not arising from contract is the amount which will compensate for all detriment caused thereby, whether anticipated or not, and that such damages are for the purpose of compensating the injured party in money for his loss or injury that the amount awarded shall be commensurate with his loss or injury and no more. He did instruct the jury on life expectancy of the deceased and of the plaintiff, his widow, and told the jury that they should consider all other evidence pertaining to the health, habits and activities of the deceased. The jury thus had before them the age, the state of health, and the earning power of the decedent. He then further advised the jury that " * * * such damages should be measured by the present cash value thereof."

The decedent left his wife and four small children, ranging in age from two to fifteen years. He had a life expectancy of 33.7 years; he had advanced in salary from $580 per month, which he received in 1960, to $1,050 per month which he was receiving at the time of his death. He was a man of exemplary habits and neither smoked nor drank.. In addition to the above salary, he was receiving a number of fringe benefits from his employer, such as payment of part of his insurance premiums, etc. Thus, there is no question but that the award of damages in this case is fully supported by the evidence when subjected to the present value test. His salary at the time of his death was over $250 per week. The jury could reasonably have found that the family benefited to the extent of from sixty-five to seventy percent of that income. Thus, the damages for future detriment reduced to the present worth, without taking into consideration any future increase in earnings the decedent could reasonably have expected to receive, would justify the amount of the verdict, and more. Geier v. Tjaden, 74 N.W.2d 361 (N.D.1955). We, therefore, find no error in the court's failure to give the requested instruction.

Certain other assignments of error are specified, predicated upon rulings of the court in the admission of evidence and upon the court's instructions to the jury. It is unnecessary for us to review all of these at length. Most of them have been disposed of or rendered immaterial by what we have already said in this opinion. All have been carefully considered. No prejudice to either of the appealing defendants could have resulted from matters complained of. They are found to be without merit.

For reasons stated herein, the judgment of the district court is affirmed.

TEIGEN, ERICKSTAD, PAULSON, and KNUDSON, JJ., concur.