Philip D. MUNRO, Plaintiff and Appellee,

v.

Lewis PRIVRATSKY, Defendant and
Appellant, and Larry J. Privratsky,
Defendant.

Civ. No. 8888.

Supreme Court of North Dakota.

July 12, 1973.

Rehearing Denied Aug. 10, 1973.

Mackoff, Kellogg, Kirby & Kloster, Dickinson, for defendant and appellant.

Freed, Dynes & Malloy, Dickinson, for plaintiff and appellee.

TEIGEN, Judge.

The defendant Lewis Privratsky (hereinafter Privratsky) has taken separate appeals from a judgment and a post-judgment order denying a motion for judgment notwithstanding the verdict or in the alternative for a new trial.

The defendant Larry J. Privratsky was dismissed from the action by the court at the close of the evidence and no appeal has been taken from that decision.

By stipulation of the parties both appeals were argued and briefed together. We will decide them together in this opinion.

The plaintiff (hereinafter Munro) obtained a judgment on a jury verdict against the defendant Privratsky for personal injuries and property damage resulting from an open intersectional automobile collision.

Errors are specified as follows:

1. The trial court erred in refusing to give four requested instructions pertaining to the duty of a driver having directional right of way;

2. The court erred in refusing to receive in evidence a written medical report in the possession of Munro's treating physician, which was received by him from an orthopedic surgeon, after referral, and was kept as a part of his patient's records;

3. The court erred in various evidentiary rulings, the cumulative effect of which was prejudicial error;

4. The court's instructions on loss of earning capacity were erroneous;

5. The court erred in denying the motion for judgment notwithstanding the verdict as Munro was contributorily negligent as a matter of law.

This action arose out of a collision of motor vehicles operated by the respective parties. The collision occurred at an open, uncontrolled intersection in Hettinger about noon on February 3, 1970. Munro was driving his 1959 Chevrolet pickup in a northerly direction and Privratsky was driving his brother's 1965 Chevrolet on an intersecting street in an easterly direction. Munro's vehicle was traveling slightly downhill and Privratsky's vehicle was traveling slightly uphill. The streets were covered with snow which was compacted and slippery. Munro entered the intersection first and had the statutory right of way, being to Privratsky's right. This statutory right of way is not in dispute. There were no other eyewitnesses to the collision. Both parties agree that the impact occurred in the northeast quadrant of the intersection and that the Munro vehicle was struck on its left side behind the door and in front of the rear fender by the right front corner or fender of the Privratsky automobile. No claim is made that Privratsky was not negligent nor that his negligence was not a proximate cause of the collision. This suit is defended on the theory that

Munro was contributorily negligent and that his contributory negligence was also a proximate cause of the collision. This claim is made on the basis that Munro, before entering the intersection, had slowed his vehicle to a speed of five to ten miles per hour, had looked to the left and saw the Privratsky automobile approaching the intersection, and then looked to his right. He continued to slow his vehicle before entering the intersection. He slowed to five or six miles per hour and looked a second time to the left. Again he saw the Privratsky automobile approaching the intersection but he failed to stop although he *probably* could have done so because his pickup was equipped with snow-grip tires and carried tools used by him in his employment as a plumber which, it is argued, added weight and improved his traction. Munro testified that he did not know how fast Privratsky was traveling. He could not state with definiteness how far from the intersection Privratsky's automobile was when he saw it except to state that it was "down the block a ways" and, on the second occasion when he saw it, it was "up the block a little farther."

Upon examination of the evidence we find that there is no evidence that Munro could have stopped his pickup before entering the intersection. The evidence is to the effect that he could have tried to stop but he was traveling downhill and may have slid into the intersection and blocked Privratsky's lane of traffic.

Munro testified that the second time he looked and saw the Privratsky automobile he decided that "I had plenty of time to proceed on across the intersection", and he accelerated to an estimated ten to twelve miles per hour. After he had crossed the southeast quadrant of the intersection and was no longer looking to his left but was looking forward and had arrived well into and almost through the northeast quadrant of the intersection, his pickup was struck by the Privratsky automobile.

Privratsky testified that he was traveling from ten to fifteen miles per hour as he

approached the intersection, and that he was traveling on the right-hand side of the street during his approach to the intersection. Upon seeing the Munro pickup enter the intersection he applied his brakes which caused his automobile to skid toward the left and, as a result, he collided with the Munro pickup in the northeast quadrant of the intersection. Privratsky agrees that the right front corner or fender of his automobile struck the Munro pickup at a point behind the door and ahead of the rear fender. He contends that at the time of the collision his car was "straddling" the east-west center line of the street upon which he was traveling, but agrees that the collision occurred in the northeast quadrant of the intersection and that his car struck the Munro pickup with its right front corner. Therefore it is clear that the meaning of the term "straddling", which he was not asked to explain, constituted a straddling whereby two front wheels were on the north side of the east-west center line and the two back wheels were on the south side thereof.

The only conflict in the evidence testified to by these two parties as to the collision appears to be the point within the northeast quadrant of the intersection where the collision occurred. Munro testified that he believed he was about to leave the intersection when the collision occurred. Privratsky testified that the collision occurred while Munro's pickup was still near the center line.

Another issue in conflict involves the conversation which occurred at the police station after the accident in which, according to testimony by Munro and a corroborating witness, Privratsky admitted that he was at fault. Privratsky testified that he does not recall making such a statement.

■ We find the evidence does not justify a finding that Munro was contributorily negligent as a matter of law.

Privratsky asserts that the trial court erred in refusing to give certain requested instructions pertaining to specific duties of a driver having the directional right of way. As a premise for this argument he refers to the following instruction which was given:

"If two vehicles enter an intersection from different streets at approximately the same time, the driver of the vehicle on the left must yield the right of way to the vehicle on the right, except in certain situations not pertinent to this case."

Privratsky admits the above instruction is correct but asserts error because it is not complete. He argues that the instructions are devoid of any statements of particular duties owing by the driver of the vehicle on the right. Three requested instructions were submitted in writing relating to this subject and he made an oral request that the court give NDJI No. 206, all of which requests were denied. The refusal, he argues, was prejudicial error.

■ There is no need for us to consider the requested instructions or proposed instruction No. 206 if, based on the evidence adduced, the instructions given, when considered together, correctly advise the jury as to the law applicable to the case. Under such circumstances there was no error even though the requested instructions, which were refused, were correct statements of the law. Armstrong v. Miller, 189 N.W.2d 688 (N.D.1971); Thornburg v. Perleberg, 158 N.W.2d 188 (N.D.1968); Hook v. Crary, 142 N.W.2d 140 (N.D.1966); Froh v. Hein, 76 N.D. 701, 39 N.W.2d 11 (1949).

Section 39–10–22, NDCC, provides:

"1. When two vehicles approach or enter an intersection from different highways at approximately the same time, the driver of the vehicle on the left shall yield the right of way to the vehicle on the right;

"2. The right-of-way rule declared in this section is modified at through highways and otherwise as hereinafter stated in this chapter."

■ The driver of an automobile having the right of way at an intersection ordinarily has the right to assume and to act upon the assumption that the drivers of automobiles approaching on his left will yield the right of way and exercise the ordinary care required of them. But the driver of a favored vehicle may not continue to rely on such assumption after circumstances develop from which a reasonable person would conclude that the driver of the approaching vehicle did not intend to yield the right of way. Zettle v. Lutovsky, 72 N.D. 331, 7 N.W.2d 180 (1942); Pederson v. O'Rourke, 54 N.D. 428, 209 N.W. 798 (1926).

■ We have also held that the driver of the favored vehicle cannot be charged with contributory negligence because he relied on the assumption that the driver of the less-favored vehicle would observe the law of the road, unless the circumstances are such that a reasonable person would conclude that the driver of the less-favored vehicle intended to disregard the law in a manner likely to create a hazardous situation. Umland v. Frendberg, 63 N.W.2d 295 (N.D.1954).

■ The only evidence of negligence in this case is that which tends to prove that Privratsky drove his automobile so as to make it collide with the Munro pickup. It is clear that the collision was the fault of Privratsky. There is no testimony showing any negligence on the part of Munro which may be said to have contributed to the collision. In fact there is no evidence of contributory negligence. Munro concededly was going slow, he was traveling slightly downhill, he looked and observed, and he concluded that he could safely pass through the intersection. Further, there is no evidence of circumstances whereby a reasonable person would conclude that the driver of the Privratsky vehicle intended to disregard the law in a manner likely to create a hazardous situation. Privratsky was traveling slightly uphill and had he remained on his right half of the street there would have been no collision. Both parties agree that the collision occurred in the northeast quadrant of the intersection which is a portion of the left-hand lane of the east-west street upon which Privratsky was traveling. Privratsky has produced no evidence of any duty which Munro failed to perform. Under these circumstances it was not error for the trial court to refuse to instruct pertaining to the duty of a driver having the directional right of way.

■ The trial court gave general instructions on contributory negligence and instructed the jury as to the general duties of the operators of both motor vehicles, but it did not specifically instruct as to specific duties of an operator of a motor vehicle having the directional right of way. The instructions were more favorable to Privratsky than he was entitled to under the evidence. Under these circumstances the instructions given on contributory negligence and the refusal to give the specific requested instructions must be regarded as harmless and nonprejudicial. Error cannot be based upon refusal to give instructions not warranted by the evidence. Engen v. Skeels, 60 N.D. 652, 236 N.W. 240 (1931).

Next it is specified that the trial court erred in refusing to receive as a part of the business records of Dr. Mattson, Munro's treating physician, a medical report in the form of a letter he had received from Dr. Johnson, an orthopedic surgeon to whom Dr. Mattson had referred Munro for examination. Objection was made to the receipt of the letter-report in evidence on the grounds that it was hearsay and there was no opportunity to cross-examine. The trial court sustained the objection, stating: "There is no opportunity for cross-examination."

Privratsky argues that the report should have been received in evidence: (1) as a business record under Section 31-08-01, NDCC; (2) for impeachment; and (3) as proper cross-examination.

Section 31-08-01, NDCC, is a codification of Chapter 194, Session Laws of

1937, when our Legislature adopted the Uniform Business Records as Evidence Act. It states as follows:

"A record of an act, condition, or event shall be competent evidence, in so far as relevant, if:

"1. The custodian or other qualified witness testifies to its identity and the mode of its preparation;

"2. It was made in the regular course of business, at or near the time of the act, condition, or event; and

"3. The sources of information and the method and time of preparation, in the opinion of the court, were such as to justify its admission.

"For the purpose of this section, the term 'business' shall include every kind of business, profession, occupation, calling, or operation of institutions, whether carried on for profit or not."

■ Since its adoption this court has held that the purpose of the statute is to enlarge the exception to the hearsay evidence rule, that the statutes should be liberally construed to that end, and that the ruling of the trial court on the admission or exclusion of records under the statute will not be reversed in the absence of a manifest abuse of discretion. J. R. Watkins Company v. Vangen, 116 N.W.2d 641 (N.D.1962); State v. Ramstad, 87 N.W.2d 736 (N.D.1958); Northwestern Improvement Company v. Norris, 74 N.W.2d 497 (N.D.1955).

■ We find that the trial court did not abuse its discretion here. Dr. Johnson at the time of the trial was dead. Obviously he was beyond the jurisdiction of the court. The letter was a product of Dr. Johnson and not Dr. Mattson. The letter purports to be Dr. Johnson speaking. It contains findings and conclusions which, if received, would become a part of the record without affording Munro an opportunity to cross-examine on the very matters in issue. Dr. Johnson examined Munro in Novem-

ber 1970. The trial was held in May 1972. The evidence establishes that Dr. Mattson continued to act as Munro's treating physician. Furthermore, Munro was also referred by Dr. Mattson to another orthopedic surgeon, one Dr. Ahrlin of Rapid City, South Dakota. Dr. Ahrlin's deposition was read at the trial by Privratsky.

Courts in other states have held that the Uniform Business Records as Evidence Act does not authorize the introduction in evidence of papers containing opinions of experts or diagnoses of physicians in circumstances similar to those in the case at bar. Knudsen v. Duffee-Freeman, Inc., 95 Ga.App. 872, 99 S.E.2d 370 (1957); Baltimore & Ohio R. Co. v. Zapf, 192 Md. 403, 64 A.2d 139 (1949); Rupp v. Travelers Indemnity Co., 17 Wis.2d 16, 115 N.W.2d 612 (1962); See Annotation, 6 A.L.R.2d 406.

Under the circumstances of this case we hold that the trial court did not abuse its discretion in rejecting the letter-report offered under the provisions of Section 31–08–01, NDCC, as a part of the business records of Dr. Mattson.

Although it was not argued to the trial court, Privratsky, on this appeal, argues that the letter-report of Dr. Johnson should have been admitted under the holding in the case of Vinicky v. Midland Mutual Cas. Ins. Co., 35 Wis.2d 246, 151 N.W.2d 77 (1967). However, we find that case is not applicable in the case at bar.

*Vinicky* holds that when it becomes apparent during trial that the testimony of a medical expert for one party bases his opinion testimony on another physician's report, even to the extent of using some of the physician's phrases contained in that report, but which report was not in evidence, it was proper to allow the adverse party to introduce the relevant and competent parts of the report referred to in evidence for the purposes of impeachment and verbal completeness. This is not the situation in our case. There is no indication from Dr. Mattson's testimony that he

based his opinion or diagnosis on the report of Dr. Johnson. It is noteworthy, too, that in *Vinicky* the Wisconsin Supreme Court, in respect to the report of another doctor who was not called as a witness, held that the trial court erred in admitting this report, although the doctor on the witness stand admitted that he had read it, in the absence of proof that it formed a substantial or was even a partial basis for his diagnosis.

*Vinicky* is not applicable. An error cannot be charged to the trial court for refusing to admit the letter-report of Dr. Johnson as an exhibit in the case at bar.

The third issue is whether various specified evidentiary rulings were error and, if so, was the cumulative effect prejudicial to Privratsky. First, it is urged that the trial court erred in refusing to strike oral testimony by Munro as to the amount of wages earned after his doctor advised him he could return to work. No objection was made to the question and Munro was permitted to answer. Following the answer Privratsky's attorney moved to strike the answer after making inquiry and learning that Munro possessed a record of his earnings. The motion to strike the answer was then made on the ground that it was not the best evidence. The motion was denied. The evidence does not establish what the "record" Munro admitted having consisted of. Later, on Munro's identification, his employee's copy of a Federal Income Tax W–2 Form for the year 1969 was admitted in evidence. This record disclosed that Munro had earnings in 1969 in the form of wages in the amount of $6,637.50. The oral testimony which he had given was that his wages were "Oh, approximately $550.00 a month." Munro lost about three and a half months' employment as a result of his injuries. On the basis of his testimony of the average amount per month earned in 1969, lost wages would equal about $1,900. The jury, however, allowed him $1,375 for loss of wages. This amount was well within the average earnings for the year 1969.

Furthermore, it appears that the employer's records of Munro's earnings, both before and after the date of injury, were introduced in evidence: the monthly ledger sheet by Munro's attorney and the weekly timecards by Privratsky's attorney. These records also confirm that the loss-of-wages award made by the jury is well substantiated.

For these reasons it appears that if it was error to refuse to strike the testimony on the record as it stood when the motion was made, the error, if any, was not prejudicial. Although it was not developed by testimony, if we were to make an assumption it would be that the record possessed by Munro consisted of slips furnished him by his employer, or his employee's copy of the W–2 form. However we need not determine whether it was error to admit the oral testimony as to wages earned after Munro returned to work following his injury as no prejudice resulted from the ruling. Any error without prejudice is not a ground for reversal. Holten v. Amsden, 161 N.W.2d 478 (N.D.1968); Maier v. Holzer, 123 N.W.2d 29 (N.D. 1963).

Secondly, it is specified that the trial court erred in admitting, over objection, plaintiff's exhibit 3. This exhibit consists of a bill Munro received from the pharmacy for medication in the amount of $23.95. Objection was made that the required foundation would require the testimony of the doctor. The foundation for admission of the pharmacy bill consisted of testimony by Munro that the pharmacy bill was for medicine received from the pharmacy which was prescribed by his doctor for the injuries he received as a result of the collision. We deem the foundation sufficient.

The next claim to error made by Privratsky is that Munro was permitted to testify as to the value of his pickup immediately before the accident, over objec-

tion of lack of foundation based on Section 32–03–09.1, NDCC. This section provides:

"The measure of damages for injury to property caused by the breach of an obligation not arising from contract, except when otherwise expressly provided by law, is presumed to be the reasonable cost of repairs necessary to restore the property to the condition it was in immediately before the injury was inflicted and the reasonable value of the loss of use pending restoration of the property, unless restoration of the property within a reasonable period of time is impossible or impracticable, in which case the measure of damages is presumed to be the difference between the market value of the property immediately before and immediately after the injury and the reasonable value of the loss of use pending replacement of the property. Restoration of the property shall be deemed impracticable when the reasonable cost of necessary repairs and the reasonable value of the loss of use pending restoration is greater than the amount by which the market value of the property has been diminished because of the injury and the reasonable value of the loss of use pending replacement."

A perusal of the record establishes that Munro obtained two estimates of the cost of repair of his pickup, each of which exceeded $600. Munro, as owner of the pickup, testified that immediately prior to the accident the pickup had a value of about $500 and that subsequent to the accident it had a value of about $50, a difference of $450, which is considerably less than the cost of restoration on the basis of the estimates for repair. In such case, under the statute, the measure of damages is presumed to be the difference between the market value immediately before and immediately after the injury. He made no demand for loss of use. The jury awarded only $375 for damage to the pickup.

It is also specified that the trial court erred in admitting Munro's oral testimony pertaining to the estimates made by two local garages as to the cost of repair. Objection was made on the basis of lack of foundation. Munro did not produce these estimates in writing but testified as to the amounts from memory. Although he testified that he received estimates from two local garages, there is no evidence that these estimates were reduced to writing or that they were given to Munro in written form. Privratsky, it appears, assumed that the estimates were made in writing by the local garages. Perhaps this assumption is based on Munro's testimony that he thought he could get them from the garages. When asked if he had made any attempt, he answered: "I was down and talked to them. They were looking for them, but haven't found them." The matter, however, was pursued no further and the evidence, in our opinion, does not establish as a fact or by inference that the estimates were reduced to writing. On the basis of the record made here we cannot say that better evidence existed. The order of presentation of this evidence may be subject to some criticism because the attorney for Munro first established the value of the pickup by his oral testimony before he established the cost of repair. Objection was made, which was overruled. However, because evidence was thereafter adduced establishing that the cost of repair exceeded the market value of the pickup immediately previous to the accident, we think this error was without prejudice.

He next complains that the court erred in permitting Munro, in Privratsky's absence, to testify as to a conversation Munro had with a salesman of health insurance over objection that it was hearsay.

It appears that on March 31, 1971, more than a year after the accident, Munro made application for health insurance for himself and his family. During cross-examination of Munro, Privratsky's attorney produced a copy of the application and had it marked as an exhibit. Munro admitted that the application contained a true and correct copy of his signature and that the

insurance policy applied for was issued by the company. He was then questioned relative to answers to certain questions pertaining to the health history of the persons named in the application. One question asked if anyone named in the application "had chronic headaches", which was answered, "No". Another statement contained in the application asked if every person named therein was in good health and free from mental or physical deformity or defects, except as noted therein, which was answered, "Yes." When questioned in respect to these answers, Munro testified in reference to the modus operandi of the insurance salesman:

"That is the fellow that made it out. I told him about my headaches and my neck, it was bothering me, and he said that made no difference."

He also testified that the insurance salesman asked the questions and filled in the answers and, upon completion, Munro signed the application.

On redirect examination by his own attorney Munro was asked to make further explanation of the transaction. He explained that the insurance salesman called on him at his home. He then was asked:

"Did you have any discussions with him concerning your neck and shoulder problem?"

Objection was then made that this called for hearsay testimony. The objection was overruled and Munro was permitted to testify:

"A. I told him that I was in an accident and that my neck bothered me and I had headaches.

"Q. What did he say?

"A. It didn't matter.

"Q. And then he proceeded to fill out all of these things?

"A. Yes.

"Q. He filled out all of these that you see here?

"A. Yes."

The purpose of introducing the application in evidence was an attempt to impeach the credibility of Munro in regard to his testimony of lingering injury resulting from the accident. Explanation of the contents of the application was opened by Privratsky's attorney on cross-examination when he permitted Munro to testify as to the conversation he had with the insurance agent pertaining to his physical condition, and was told that it "made no difference." As a general rule a party to an instrument who admits its execution does not necessarily admit the truth of its contents and may show by further evidence the truth or untruth of its recitals. 29 Am.Jur.2d Evidence, § 840.

The application for insurance was introduced in evidence as a part of the cross-examination of Munro, the plaintiff, and he can show all the surrounding circumstances on redirect examination. Schuetzle v. Nash-Finch Co., 72 S.D. 588, 38 N.W.2d 137 (1949).

The last claim to errors on evidentiary rulings pertains to certain questions asked of Dr. Ahrlin, an orthopedic surgeon of Rapid City, South Dakota, on cross-examination. As a part of his defense Privratsky had taken the deposition of Dr. Ahrlin, which he caused to be read to the jury in lieu of live testimony.

Munro had been referred to Dr. Ahrlin by Dr. Mattson, Munro's treating physician. Dr. Ahrlin examined Munro on April 13, 1970, and made a report of his examination to Dr. Mattson. During the reading of the deposition to the court and the jury, objections were made to some of the questions asked on cross-examination, which were overruled. Privratsky now specifies that this was error. The deposition was taken on March 10, 1972, almost two years after Dr. Ahrlin examined Munro. At the time of the examination in April 1970, Dr. Ahrlin employed certain tests and found that Munro was suffering pain in both his neck and shoulder, but opined that Munro should not have lasting problems. He suggested that Dr. Mattson

might wish to inject the shoulder a few times with cortisone because of bursitis and cuff irritation. He concluded:

"I just felt that all these things would probably clear up with the exception of maybe putting a little cortisone in his shoulder."

And further:

"I suggested that he probably could return to work, and I'm sure that Dr. Mattson had probably asked me [that] point directly in his communication whether he should be working or not."

Although reference was made to the written medical report submitted by Dr. Ahrlin to Dr. Mattson, the report was not placed in evidence.

Following direct examination of Dr. Ahrlin he was cross-examined by Munro's attorney. The first question to which an objection was made related to the previous question and answer, which were as follows:

"Q. Since you haven't seen him since then, of course, you have no way of expressing an opinion as to whether or not he is still suffering from difficulty in the right shoulder?

"A. No, I wouldn't know."

He was then asked:

"Q. It would be reasonable to think that he may be, is that correct?"

To which the following objection was made:

"We object. He has indicated that he did not have an opinion and therefore the answer to the question here calls for speculation and it is incompetent."

The objection was overruled. The answer was as follows:

"A. No. It probably wouldn't be reasonable to expect anything because I don't know whether he's seeing Dr. Mattson or not. But he's not seeing me and I have to assume he's having no trouble at all. But I'm not treating him.

I was just consulting and if Dr. Mattson was still treating him, then I would assume he's still having a little problem, but if Mattson is not treating him, I would assume that it's pretty well cleared up."

In view of this answer there is no need to review the objection as the answer is favorable to Privratsky. The question called for a simple "yes" or "no" answer. Dr. Ahrlin's answer to the question was "No." The rest of the answer was volunteered, it was not responsive, and no objection or motion to strike was made on that basis.

■ The next claim to error of evidentiary rulings was directed to the following question asked Dr. Ahrlin on cross-examination:

"Q. I'll rephrase the question. If this type of symptom, and I refer to the pain in the right shoulder and the pain in the neck, has persisted for over two years after its onset, in your judgment would this be an indication of a chronic problem?"

Objection was made to the form of the question: that it was irrelevant, stated facts not in evidence, was inconsistent with the findings of the doctor and, also, that it was speculative as to this witness. The objection was overruled and the doctor answered:

"A. Well, it would be hard for me to give any honest opinion on it."

The attorney for Privratsky then objected to any further reading of the answer because the witness had indicated that it was hard to state an opinion and because it did not meet the quantum of proof necessary. This objection was overruled and the balance of the doctor's answer to the question was then read from the deposition. The trial court had the advantage of being informed of the balance of the doctor's answer before it ruled. The balance of the answer is as follows:

"A. I know that if the neck was giving him trouble he can also feel it in the

shoulder. I know that if he's got troubles in the shoulder that he can also feel it up in his neck, too, with the muscles that cross in those areas. I did feel he had a cuff injury and these can become chronic things and give them lots of troubles. Sometimes we have to go in and incise the defective area there and re-attach that cuff to the bone in the shoulder. As I said earlier, these bursal things and these cuff things can keep recurring, not because of indiscretions on the part of the patient, but overusing an arm, like pitching hay or doing work up above his head can irritate that cuff and also the bursa and get these little things starting over and over and over. Most of the time people learn to protect themselves by knowing what it is that bugs them and they try to avoid it. If they're truck drivers and they're driving a lot, then they can't avoid it so easy."

The doctor did not say that he could not give an opinion; he merely said it would be hard to do so.

In view of the circumstances we believe the objections were properly overruled.

In view of our holdings on the various specified evidentiary rulings as set forth in this opinion, we find no prejudice either as to any specific rulings or cumulatively.

Privratsky has also specified that the court erred in its instruction pertaining to loss of productive time, particularly as a portion of the instruction pertains to recovery for future loss of productive time because of impairment of occupational ability. The claim is that it was error to instruct as to future loss of productive time for the reason that there is no evidence adduced upon which the jury could find that Munro suffered a loss of earning capacity in the future and that, therefore, the giving of such instruction invited the jury to "either speculate or utilize an unfair comparison." In other words, it is the contention that it was prejudicial error to instruct the jury on the right to recover for diminution of earning power in the future when the record was devoid of any evidence to sustain such a claim. Whether, under the evidence, it was error to give this instruction we need not 'determine. The jury, by its verdict, awarded the sum of $1,375 for "loss of productive time." According to the evidence this is less than the earnings Munro lost for the period of approximately three and one-half months during which he was laid up as a result of the injuries he received in the collision. It is thus obvious that the jury awarded no compensatory relief for loss of productive time or diminution of earnings in the future. Thus the claimed error in the instruction was without prejudice.

Privratsky's final contention is that the evidence was insufficient to sustain the verdict. It is a well-established rule that a motion for new trial on the ground of insufficiency of the evidence to justify the verdict involves the legal discretion of the trial court to exercise such discretion in the interests of justice, and that the trial court's decision will not be disturbed on appeal unless an abuse of discretion is clearly established. Trautman v. New Rockford-Fessenden Co-op Tr. Ass'n, 181 N.W.2d 754 (N.D.1970).

On the basis of the record in this case we find the trial court did not abuse its discretion in denying the motion for new trial as there is substantial evidence to sustain the verdict.

Privratsky also challenges the sufficiency of the evidence to sustain the verdict in his appeal from the judgment. In reviewing the sufficiency of the evidence on an appeal from a judgment the credibility of the witnesses and the weight to be given to their testimony are ordinarily considered to be questions of fact for the jury to determine. Thus in reviewing the evidence we must consider it in the light most favorable to the verdict. It is only when the evidence is such that reasonable men can draw but one conclusion therefrom that the questions of negligence, proximate cause and contributory negligence become

questions of law for the court. Armstrong v. Miller, 189 N.W.2d 688 (N.D.1971); Trautman v. New Rockford-Fessenden Co-op Tr. Ass'n, *supra*; Tennyson v. Bandle, 181 N.W.2d 687 (N.D.1970); Willard v. Owens, 164 N.W.2d 910 (N.D.1969); Christensen v. Farmers State Bank of Richardton, 157 N.W.2d 352 (N.D.1968).

We have reviewed the evidence in this case, applying the rules set forth, and find that there is substantial evidence to sustain the verdict of the jury.

For the reasons set forth above, the judgment and order denying motion for judgment notwithstanding the verdict or in the alternative for a new trial are affirmed.

ERICKSTAD, C. J., and PAULSON and KNUDSON, JJ., concur.

VOGEL, J., not being a member of the Court at the time of submission of this case, did not participate.