Edna MOSER, Plaintiff and Appellant,

v.

Jacqueline WILHELM, Defendant, Third
Party Plaintiff and Appellee,

v.

Violet LONG, Third Party Defendant.

Civ. No. 9816.

Supreme Court of North Dakota.

Dec. 19, 1980.

Rehearing Denied Jan. 23, 1981.

Chapman & Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman, Bismarck.

Zuger & Bucklin, Bismarck, for defendant, third party plaintiff and appellee; argued by William P. Zuger, Bismarck.

ERICKSTAD, Chief Justice.

This is a tort action in which judgment was entered for the plaintiff, Edna Moser, and against the defendant, Jacqueline Wilhelm, in Burleigh County District Court. Moser appeals from the judgment and alleges that there were substantial and prejudicial errors which presumably reduced her award of damages. We affirm the judgment.

Moser was a passenger in an automobile driven by Violet Long. While the Long vehicle was proceeding west on a through street in Bismarck, North Dakota, it was struck on the right front by the Wilhelm automobile which failed to stop for a stop sign while proceeding south. Wilhelm testified she was unfamiliar with Bismarck, that the stop sign was obstructed by branches, and that the Long vehicle seemed to slow down as it approached the intersection on

the through street. Wilhelm testified that she believed the Long vehicle was going to yield the right-of-way at which time Wilhelm continued into the intersection and the collision resulted. Long testified that she did not see the Wilhelm vehicle approaching. The testimony concerning obstructions on the northeast corner of the block which could have interfered with Long's view of traffic approaching from the north was unclear.

In the resulting collision, Moser was injured. There was a great deal of evidence regarding Moser's injuries, treatment, and her condition preceding the accident. There was also testimony concerning previous injuries and medical opinions as to the amount of disability allocable to the preexisting conditions and the injury.

The jury determined that Wilhelm was 90 percent negligent and Long was 10 percent negligent and awarded Moser $7,500 in damages. Accordingly, Moser recovered a judgment of $7,500 less $750 (10%) or total of $6,750. Additionally, costs were awarded to Wilhelm and against Moser from the date of a settlement offer of $9,000 from Wilhelm, because it exceeded the judgment awarded Moser. This was pursuant to a motion under Rule 68(a) of the North Dakota Rules of Civil Procedure.

The issues raised by Moser are as follows:

"I.

"Did the Court err in refusing to grant Plaintiff's motion to dismiss from the consideration of the jury the matter of the alleged negligence of Violet Long and did the Court further err in failing to grant a new trial on the issue of the negligence of Violet Long?

"II.

"Was the evidence sufficient to take the matter of the negligence of Violet Long to the jury?

"III.

"Did the Court err in its instruction to the jury relative to the matter of dam-ages, specifically in that it failed to correctly apprise the jury of the law with regard to damages arising from a latent, asymptomatic, non-disabling condition and did the Court further err in failing to grant a new trial on the issue of damages only?

"IV.

"Did the Court err in advising the jury of a 'settlement' between Violet Long and Edna Moser when the amount of such settlement was zero, without advising the jury of the amount of the 'settlement'?

"V.

"Did the Court err in refusing to permit the Plaintiff to show special damages to the jury?

"VI.

"Did the Court err in granting judgment to the Defendant for the 'costs' before the judgment in the main action was entered?

"VII.

"Did the Court err in allowing certain costs to be charged against the Plaintiff?"

I. NEGLIGENCE OF LONG

Moser's issues I. and II. will be considered under this section. Moser alleges that Long was, as a matter of law, not negligent and that the trial court erred in allowing the question to go to the jury. "We have often said in the past that issues of negligence, proximate cause, and contributory negligence ordinarily are questions of fact for the trier of fact unless the evidence is such that reasonable minds can draw but one conclusion . . ." *Bauer v. Graner*, 266 N.W.2d 88, 93 (N.D.1978). Moser advances the theory that Long should be able to proceed on a through street with no obligation to watch for vehicles which may fail to

stop or to yield the right-of-way. As we said in *Anderson v. Schreiner,* 94 N.W.2d 294 (N.D.1959):

> "A driver upon an arterial or through highway does not have an exclusive privilege which would require those crossing it to do so at their own risk .... He must look for other vehicles approaching upon an intersecting highway and his lookout must be such that he will see what a person in the exercise of ordinary care would have seen in like circumstances." 94 N.W.2d at 298.

■ In *Anderson,* we found the plaintiff to be negligent as a matter of law when the facts indicated that the plaintiff would have had a clear view of the defendant's vehicle for more than 1200 feet before it reached the intersection had he looked. While we determined that the plaintiff was negligent as a matter of law for failing to keep a proper lookout, we held that whether the negligence was a proximate cause of the accident was a question for the jury. We said:

> "Therefore it is reasonable to say that if a jury may find that the conduct of an observing driver, who was aware of an approaching car and the possible danger at an intersection, was reasonable in the circumstances, they may also find that the conduct of a non-observing driver, who was unaware of the danger, was reasonable in identical circumstances, even though his ignorance of possible danger was due to his own negligence. The ultimate jury question is whether the conduct of the driver on the arterial highway was reasonable in the light of what he saw or should have seen. Because of his qualified right to rely on his preferred status there is no inescapable inference that a driver upon an arterial highway, who hadn't looked for cars approaching on an intersecting highway would have behaved any differently if he had looked. It follows that whether his negligence in not looking was a proximate cause was a question for the jury." 94 N.W.2d 294, 299.

This court has repeatedly held that a driver on a favored roadway must exercise due care and keep a proper lookout. *Kelmis v. Cardinal Petroleum Company,* 156 N.W.2d 710, 715 (N.D.1968); *Gleson v. Thompson,* 154 N.W.2d 780, 786 (N.D.1967); *Kuntz v. Stelmachuk,* 136 N.W.2d 810, 816 (N.D. 1965); *Anderson v. Schreiner, supra,* 94 N.W.2d at 298. Viewing the evidence in the light most favorable to the verdict, the jury determination that Long was 10 percent negligent was supported by the evidence. *Gleson v. Thompson, supra,* 154 N.W.2d at 786–87. The evidence revealed that Mrs. Long did not see the Wilhelm vehicle until impact. The jury could have found that she failed to maintain a proper lookout. The evidence also showed that Long had a tendency to slow down at every intersection. Wilhelm stated she believed Long was slowing down to yield right-of-way to her. The jury could have found such action to be a lack of due care under the circumstances of this case in which it appears that Wilhelm was unfamiliar with Bismarck, believed she was on a through street, that there was evidence that the stop sign was partially obstructed, and there was testimony that it was raining and misting. The evidence was sufficient to submit the question of Long's negligence to the jury and it was not error for the court to deny a new trial to Moser on this basis.

## II. INSTRUCTIONS ON PREEXISTING CONDITION

■ Moser alleges that the instructions concerning aggravation of a preexisting condition were confusing and amounted to misdirection. Additionally, she alleges that the trial court's failure to instruct on aggravation of a latent, asymptomatic condition was error and a new trial should be granted as to damages only.

The instructions given were as follows:

### "CONDITION NOT CAUSED BY DEFENDANT'S WRONGDOING

"The defendant cannot be held liable for any aggravation of the plaintiff's physical condition due to natural causes.

"If you find that the plaintiff suffers from some unfortunate condition which, although inviting your sympathy, was not proximately caused by any wrongdoing on the defendant's part, you may not assess damages for that condition against the defendant.

"If a person is not in good health or in good physical condition at the time he is subjected to wrongful conduct of another and his subnormal condition is aggravated by the wrongful conduct, the worsening effect is an item of detriment for which damages may be awarded if the injured person is otherwise entitled to recover damages."

Moser contends that the first part of this instruction is confusing and should be determined to be grounds for granting a new trial pursuant to *Mousel v. Widicker*, 69 N.W.2d 783 (N.D.1955). The first part of this instruction could have been more clear, but a plain reading of the instruction reveals its proper construction. It simply means that the defendant is not liable for any aggravation of the plaintiff's physical condition when such aggravation is due to natural causes and is not due to the defendant's conduct. This is the obvious meaning of the three paragraphs when they are read together. As we said before, instructions must be read as a whole. *Vasichek v. Thorsen*, 271 N.W.2d 555, 561 (N.D.1978). When read as a whole, there can be no doubt that the instruction permits the plaintiff to recover for an aggravation of his condition resulting from the defendant's actions. This is a correct statement of the law. *Kuntz v. Stelmachuk, supra*, 136 N.W.2d at 819. Furthermore, while this instruction was being discussed in chambers, Moser's counsel did not request more specific language. In the absence of such a request, error cannot be assigned unless the instruction results in misdirection. *Fisher v. Suko*, 111 N.W.2d 360 (N.D.1961).

Moser also asserts that it was error for the trial court to fail to instruct the jury that Wilhelm could be liable for activation of a latent asymptomatic condition. Moser testified that she did not have any pain before the accident. Expert testimony revealed that Moser had an osteoarthritic condition and that she had a mild to moderate degenerative change in her back described as normal wear and tear. Evidence was also received that a person with these conditions may have no pain at all and then some trauma or injury can "trigger" pain from these conditions. The parties agreed that Wilhelm would be liable for the pain suffered from these conditions if they were latent, symptom-free conditions prior to the accident and it was Wilhelm's actions which triggered the pain. The evidence revealed that Moser had some back trouble "many years ago," and that approximately 15 years before trial she had treatment for her back. She had fallen outside a Red Owl store and had treatments for that fall from December 1973 to January 1974. She had "twisted" her back in 1974 simply sealing a jar. She had 59 chiropractic treatments between December 11, 1973, and May 21, 1976, when the accident occurred.

If Moser's theory that her condition was latent and asymptomatic is supported by the pleadings, evidence, and applicable law she is entitled to have her theory presented to the jury. *Johanson v. Nash Finch Company*, 216 N.W.2d 271, 274 (N.D.1974). It is equally true that "[e]rror cannot be based upon refusal to give instructions not warranted by the evidence." *Munro v. Privratsky*, 209 N.W.2d 745, 751 (N.D.1973).

Under these circumstances, Moser's theory that she had a latent, symptom-free condition is not supported by the evidence, and it was not error for the trial court to refuse to instruct the jury on that theory. In our view, the court did not manifestly abuse its discretion in denying Moser's motion for a new trial on the issue of damages as the instructions were proper and covered all relevant theories of law. *Cook v. Stenslie*, 251 N.W.2d 393, 395 (N.D. 1977). It is not proper to give instructions on law not warranted by the evidence. *Munro v. Privratsky, supra*, 209 N.W.2d at 751.

## III. ADVISING JURY OF SETTLEMENT

The next issue asserted by Moser is that the trial court erred by advising the jury that there had been a settlement but did not tell the jury that the amount was only one dollar and "other valuable consideration." Moser suggests that telling the jury of the settlement allowed the jury to infer that she had received a significant monetary settlement. Moser also asserts that revealing the settlement may have caused the jury to believe that Long had been negligent and perhaps, therefore, caused the jury to find Long partially responsible. By finding Long 10 percent negligent, Moser's award was reduced by 10 percent as "recovery from the non-settling tort-feasor is limited to the percentage of negligence attributable to the remaining non-settling tort-feasors as may be determined by the court or the jury as the case may be." *Bartels v. City of Williston*, 276 N.W.2d 113, 122 (N.D.1979).

■ To determine the amount of recovery, it was proper for the trial court to ask the jury to determine the amount of negligence, if any, attributable to each of the parties involved. Whether or not the jury should be informed of the settlement rests within the discretion of the trial court. *Frey v. Snelgrove*, 269 N.W. 918, 922 (Minn. 1978); *Bohrer v. Clark*, 590 P.2d 117, 125 (Mont.1978); *Degen v. Bayman*, 86 S.D. 598, 200 N.W.2d 134, 139 (1972).

We agree with what the court of appeals of Oregon said in *Yardley v. Rucker Bros. Trucking, Inc.*, 42 Or.App. 239, 600 P.2d 485 (1979):

> "Depending upon the circumstances, it might be proper or improper for evidence to be admitted before the jury of the existence of a prior settlement .... But if evidence of a prior settlement is admitted, we have concluded the court must unequivocally instruct the jury to disregard the settlement and return a verdict for the full amount of the plaintiff's damages." 600 P.2d at 488.

■ When the jury in the discretion of the trial court is advised that there has been a settlement, it must clearly be instructed to disregard the settlement in assessing the plaintiff's damages. In this case, the trial court instructed the jury that the amount paid by Long to Moser was not relevant and that they should not speculate on the settlement.

■ It was not an abuse of discretion for the trial court to inform the jury that Long was no longer a party in the lawsuit because of a settlement in light of the instruction to the jury not to speculate on the settlement. *Frey v. Snelgrove, supra*, 269 N.W.2d at 923.

In *Frey*, the settlement occurred during trial. In the instant case, the settlement was prior to trial. Notwithstanding that difference in circumstances, we believe the court acted properly in this case. We think pertinent what the Supreme Court of Minnesota said in *Frey v. Snelgrove*, 269 N.W.2d at 923:

> "Although a release agreement is admissible under Rule 408 of the Rules of Evidence, where it is offered for a purpose such as proving bias or prejudice of a witness, it is within the trial court's discretion to determine whether to admit the actual agreement into evidence, or the details thereof. The jury should be given those facts necessary to arrive at a fair verdict to all parties, but *as a general rule the amount paid in settlement should never be submitted.* That figure itself may have little relation to the actual damages of a plaintiff, since it may reflect a compromise, the evaluation of a defendant's potential liability, and many other factors not relevant to a jury's consideration of actual monetary damages." [Emphasis added.]

## IV. EXCLUSION OF ECONOMIC LOSSES

■ Moser next asserts that the trial court erred when it determined that Wilhelm was a "secured person" under Section 26–41–12 of the North Dakota Century Code, which is the Auto Accident Reparations Act (hereinafter "no-fault" law). Pri-

or to trial, it was determined by admission that Moser had not exhausted her "basic no-fault benefits." Under Section 26–41–12, N.D.C.C., a "secured person" is exempt from paying such economic losses to the extent such benefits are payable.[1] It could not be determined from the record what amounts, if any, had been paid to Moser as basic no-fault benefits. Therefore, Moser agrees that if Wilhelm is a secured person that she was properly prevented from proving economic loss.

The application of Section 26–41–12, N.D.C.C., was discussed in *McGarry v. Skogley*, 275 N.W.2d 321, 323 (N.D.1979):

"A 'secured person,' another word of art defined in § 26–41–03(17), NDCC, is exempt from liability for noneconomic loss as defined in § 26–41–03(9), NDCC, to include pain and suffering, unless there is a serious injury as defined above, and from liability for economic loss as defined above, to the extent that they are paid or payable under basic no-fault benefits of the injured person's own no-fault coverage. *See* § 26–41–12, NDCC."

In *McGarry*, we held that the trial court had properly excluded evidence of economic loss where the party did not meet the minimum threshold and prove that the evidence was being offered for purposes other than on the issue of damages.

Moser states in her brief that "the jury was never informed as to the extent of the special damages suffered by the plaintiff. This has traditionally been one gauge of a plaintiff's damages. It was denied in this case to the plaintiff." We disposed of this contention in *McGarry v. Skogley, supra*, 275 N.W.2d at 323, where we said:

"McGarry argues that 'in an action for the recovery of monetary damages for a personal injury, it can hardly be maintained that the amount of the medical bills for the treatment of the injury is not relevant to establish a fact in issue.' We do not agree. This is not a fault-finding personal injury suit—testimony as to monetary medical expenses incurred is only relevant insofar as those expenses are pertinent to any of the issues under the statute which are appropriately raised."

The exclusion of this evidence rests upon the finding that the defendant is a secured party. Therefore, if Wilhelm is a secured party, Moser was properly prevented from introducing evidence of economic loss as defined in Section 26–41–03(5), as follows:

"5. 'Economic loss' means one or more of the following:

a. Medical expenses and rehabilitation expenses; and

b. Work loss, replacement services loss, survivors income loss, survivors replacement services loss, and funeral, cremation, and burial expenses."

Section 26–41–03(17) defines "secured person" as follows:

"17. 'Secured person' means the owner, operator, or occupant of the secured motor vehicle, and any other person or organization legally responsible for the acts or omissions of such owner, operator, or occupant."

This definition relies upon the definition of "secured motor vehicle" which is found at Section 26–41–03(16):

"16. 'Secured motor vehicle' means a motor vehicle with respect to which the security required by this chapter was in effect at the time of its

---

1. "*26–41–12. Secured person exemption.—*

"1. In any action against a secured person to recover damages because of accidental bodily injury arising out of the ownership or operation of a secured motor vehicle in this state, the secured person shall be exempt from liability to pay damages for:

a. Noneconomic loss unless the injury is a serious injury.

b. Economic loss to the extent of all basic no-fault benefits paid or to become payable for such injury under this chapter after subtracting the same elements of loss recoverable under any workmen's compensation act.

"2. The exemption described in subsection 1 shall not apply unless the person who has sustained accidental bodily injury is a person who may qualify for basic no-fault benefits pursuant to section 26–41–07 and who is not excluded under section 26–41–08." § 26–41–12, N.D.C.C.

involvement in the accident resulting in accidental bodily injury."

These statutes should be read in their plain, ordinary, and commonly understood meaning. *Weber v. State Farm Mutual Insurance Co.*, 284 N.W.2d 299, 302 (N.D.1979).

Consideration should also be given to the context of the statutes and the purposes for which they were enacted.[2] 284 N.W.2d at 302. The purpose of the "no-fault" law, among other objectives, was to provide adequate compensation for victims of motor vehicle accidents. The victim, if a passenger, may recover the basic no-fault benefits from the insurer of the secured vehicle without proving fault. In this case, the evidence shows that both vehicles involved were "secured motor vehicles" pursuant to Section 26–41–03(16). Therefore, Long, Moser, and Wilhelm were all "secured persons" pursuant to Section 26–41–03(17). In accordance with Section 26–41–12, N.D. C.C., all were exempt from liability for economic losses to the extent of all basic no-fault benefits paid or payable. Therefore, because Moser had not exhausted her basic no-fault benefits, she was properly prevented from introducing evidence of economic loss.

## V. ALLOWANCE OF COSTS PURSUANT TO RULE 68(a) OF THE NORTH DAKOTA RULES OF CIVIL PROCEDURE

Moser's final assertion is that the trial court erred in entering a judgment for defendant for costs incurred after Moser rejected Wilhelm's settlement offer which was more favorable than the judgment finally obtained. We will not address this issue because the judgment was subsequently vacated.

Moser also objects to various costs allowed by the trial court. Costs to be allowed are in the discretion of the trial court. § 28–26–10, N.D.C.C. An abuse of discretion is defined as an unreasonable, arbitrary, or unconscionable attitude on the part of the trial court. *Wall v. Pennsylvania Life Insurance Co.*, 274 N.W.2d 208, 218 (N.D.1979). The costs complained of were entered pursuant to Rule 68(a), N.D.R. Civ.P. In this case, Wilhelm made an offer of settlement under Rule 68(a). This offer was more favorable than the judgment which Moser finally obtained. Pursuant to Rule 68(a), Wilhelm made a motion to have costs, which were subsequent to the offer, taxed to the plaintiff. Moser has failed to convince us that the allowance of any of the costs was an abuse of discretion.

In accordance with the foregoing reasoning, the judgment is affirmed.

VANDE WALLE, PEDERSON, PAULSON and SAND, JJ., concur.

---

2. *"26–41–02. Legislative declaration.*—The legislative assembly declares that its purpose in enacting this chapter is to avoid inadequate compensation to victims of motor vehicle accidents, to require registrants of motor vehicles in this state to procure insurance covering legal liability arising out of ownership or operation of such motor vehicles and also providing benefits to persons occupying such motor vehicles and to persons injured in accidents involving such motor vehicles; to limit the right to claim damages for noneconomic loss in certain cases; and to organize and maintain an assigned claims plan." § 26–41–02, N.D.C.C.